IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEE ANN MILLER | ) | |
| | ) | Case No. 1:16-cv-00166-TWP-DLP |
| *Plaintiff* | ) | |
| | ) | Judge Tanya Walton Pratt |
| *v.* | ) | |
| | ) | Magistrate Judge Doris L. Prior |
| HARTFORD LIFE & ACCIDENT | ) | |
| INSURANCE COMPANY and SPRINGLEAF | ) | |
| FINANCE, INC. DISABILITY PLAN | ) | |
| | ) | |
| *Defendants* | ) | |

---

**HARTFORD LIFE & ACCIDENT INSURANCE COMPANY'S AND
GROUP LONG TERM DISABILITY PLAN FOR
EMPLOYEES OF SPRINGLEAF FINANCE, INC.'S
RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Warren von Schleicher (IL – 6197189)
SMITH | VON SCHLEICHER + ASSOCIATES
180 North LaSalle St. Suite 3130
Chicago, Illinois 60601
P  312.541.0300  |  F  312.541.0933
warren.vonschleicher@svs-law.com

# TABLE OF CONTENTS

Table of Authorities.................................................................................................. iii

Introduction...............................................................................................................1

Statement of Material Facts in Dispute.....................................................................2

Argument .................................................................................................................18

I.    Miller Fails to Properly Apply the Arbitrary and Capricious Standard.........18

II.   Hartford Reasonably Determined that Miller Failed to Satisfy the Plan's
      "Your Occupation" Definition of Disability.................................................20

      A. Hartford's determination has rational support in the administrative record............20

         1.  Hartford's determination is supported by the findings of the
             administrative law judge .....................................................................23

         2.  Hartford reasonably relied on the opinions of qualified consulting
             physicians who evaluated the medical evidence..................................25

         3.  Hartford reasonably determined that Miller lacked objective or clinical
             evidence of a disabled functional impairment due to fibromyalgia..................27

      B. There is no burden-shifting presumption of disability when an
         ERISA administrator terminates benefits ..............................................29

III.  A Structural Conflict of Interest Does Not Transform Hartford's Reasonable
      Determination into an Arbitrary and Capricious Determination ...................32

Conclusion ..............................................................................................................33

# TABLE OF AUTHORITIES

**Cases**

*Aschermann v. Aetna Life Ins. Co.,*
No. 1:10-cv-00433-LJM-MJD, 2011 WL 6888840 (S.D. Ind. Dec. 30, 2011),
*aff'd*, 689 F.3d 726 (7th Cir. 2012) .................................................................30

*Black & Decker Disability Plan v. Nord,*
538 U.S. 822 (2003) ..........................................................................................26

*Cheney v. Standard Ins. Co.,*
831 F.3d 445 (7th Cir. 2016) ............................................................................30

*Davis v. Unum Life Ins. Co. of Am.,*
444 F.3d 569 (7th Cir.), *cert. denied*, 549 U.S. 884 (2006) ....................25, 26, 31

*Edwards v. Briggs & Stratton Ret. Plan,*
639 F.3d 355 (7th Cir. 2011) ............................................................................20

*Fischer v. Liberty Life Assur. Co. of Boston,*
576 F.3d 369 (7th Cir. 2009) ............................................................................19

*Frye v. Thompson Steel Co., Inc.,*
657 F.3d 488 (7th Cir. 2011) ............................................................................30

*Garvey v. Piper Rudnick LLP Long Term Dis. Ins. Plan,*
No. 08 C 1093, 2012 WL 1079966 (N.D. Ill. Mar. 30, 2012) .........................22

*Geiger v. Aetna Life Ins. Co.,*
845 F.3d 357 (7th Cir. 2017) ..................................................................20, 30, 32

*Hawkins v. First Union Corp. Long-Term Disability Plan,*
326 F.3d 914 (7th Cir. 2003) ............................................................................26

*Hightshue v. AIG Life Ins. Co.,*
135 F.3d 1144 (7th Cir. 1998) ..........................................................................20

*Kay v. Consolidated Route, Inc., Plan No. 510,*
No. 04 C 6562, 2005 WL 2978946 (N.D. Ill. Nov. 3, 2005) ..........................21

*Kobs v. United Wis. Ins. Co.,*
400 F.3d 1036 (7th Cir.), *cert. denied*, 546 U.S. 1033 (2005) .......................20

*Kuznowicz v. Wrigley Sales Co., LLC,*
No. 11 C 165, 2013 WL 4052381 (N.D. Ill. Aug. 12, 2013) ...........................26

*Leger v. Tribune Co. Long Term Disability Benefit Plan*,
557 F.3d 823 (7th Cir. 2009) ...................................................................30

*Marantz v. Permanente Medical Group, Inc. Long Term Disability Plan*,
687 F.3d 320 (7th Cir. 2012).................................................................25

*Marrs v. Motorola, Inc.*,
577 F.3d 783 (7th Cir. 2009) ...................................................................32

*Metro. Life Ins. Co. v. Glenn*,
554 U.S. 105 (2008)..................................................................................32

*Militello v. Central States, S.E. & S.W. Areas Pension Fund*,
360 F.3d 681 (7th Cir.), *cert. denied*, 543 U.S. 869 (2004) ....................31

*Mote v. Aetna Life Ins. Co.*,
502 F.3d 601 (7th Cir. 2007)..................................................22, 27, 31, 32

*Oxford v. Anthem Life Ins. Co.*,
No. 1:11-cv-00507-TWP-DML, 2012 WL 4390254 (S.D. Ind. Sept. 25, 2012)...................22

*Punzio v. Astrue*,
630 F.3d 704 (7th Cir. 2011) ...................................................................26

*Raybourne v. Cigna Life Ins. Co. of New York*,
700 F.3d 1076 (7th Cir. 2012) .................................................................32

*Sellers v. Zurich Am. Ins. Co.*,
627 F.3d 627 (7th Cir. 2010) ...................................................................30

*Semien v. Life Ins. Co. of N. Am.*,
436 F.3d 805 (7th Cir.), *cert. denied*, 549 U.S. 942 (2006)...............19, 20

*Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*,
429 F.3d 698 (7th Cir. 2005) ...................................................................19

*Trice v. Lilly Employee Welfare Plan*,
No. 1:12-202-JMS-DKL, 2013 WL 6804749 (S.D. Ind. Dec. 19, 2013) ...............................28

*Wagner v. Allied Pilots Ass'n Disability Income Plan*,
383 Fed.Appx. 565 (7th Cir. 2010)..........................................................20

*White v. Standard Ins. Co.*,
895 F.Supp.2d 817 (E.D. Mich. 2012), *aff'd*, 529 Fed.Appx. 547 (6th Cir. 2013) ................27

*Williams v. Aetna Life Ins. Co.*,
509 F.3d 317 (7th Cir. 2007) ................................................................................. 22-23, 28

*Wiseman v. Prudential Ins. Co. of Am.*,
No. 1:12-cv-01337-SEB-DML, 2014 WL 4753692 (S.D. Ind. Sept. 24, 2014) ............... 25, 28

**Statutes**

29 U.S.C. §1132(g) ......................................................................................................... 33

20 CFR 404.1567(a) ........................................................................................................ 23

**Additional Authority**

http://www.centerforrheumatology.com/dr-benjamin-kretzmann/ ......................................... 18

# INTRODUCTION

Plaintiff Dee Ann Miller ("Miller") initiated this lawsuit to obtain disability benefits under the Group Long Term Disability Plan for Employees of Springleaf Finance, Inc. (the "Plan"). The Plan grants discretionary authority to Hartford Life & Accident Insurance Company ("Hartford"), warranting judicial review under the arbitrary and capricious standard. Under this highly deferential standard, Hartford's determination prevails as long as it has rational support in the administrative record.

Miller acknowledges that the arbitrary and capricious standard applies in this case. But she conflates deferential judicial review into *de novo* judicial review. She incorrectly insists that the Court should independently weigh the medical evidence, and do so with a thumb on the scale in her favor, by giving "significant weight" to the opinion of her treating family physician, Dr. Judi Brezausek, and minimal weight to the physicians consulted by Hartford. The pervasive theme of Miller's Memorandum is that Dr. Brezausek's opinion of disability constitutes the "best evidence" simply because Dr. Brezausek is a treating physician.

Under the arbitrary and capricious standard, however, case law holds that there should be no weighing of the medical evidence. The judicial task is not to determine what evidence is the "best" evidence, but only whether the administrator's determination has rational support. Hartford considered Dr. Brezausek's opinion that Miller could not sit, stand, or walk longer than 15 minutes at a time or more than 1 hour total per day, but appropriately did not find her opinion to be dispositive. According to Dr. Brezausek, Miller was essentially bedridden with pain. But Miller's medical records failed to corroborate Dr. Brezausek's assessment of her functional capacities. To the contrary, Miller demonstrated normal strength and range of motion with no evidence of severe functional limitations.

Miller, moreover, demonstrated far greater functionality than she proclaimed and Dr. Brezausek advocated.  In 2014, while purportedly disabled, Miller embarked on numerous vacation travels including a shopping expedition in New York City and sightseeing in Times Square.  Miller testified at her Social Security disability hearing in 2016 that she could not walk more than one-eighth of a mile due to severe chronic pain.  Yet throughout 2016, she engaged in a strenuous weight-loss exercise regimen consisting of stationary bike riding, weight lifting, and walking *5 miles every day*.  The Social Security Administration's administrative law judge found that Miller has the physical functional capacity to consistently perform sedentary level work, and that Dr. Brezausek's assessment was too restrictive.

Hartford consulted a rheumatologist and internist, who concurred that Miller possesses the physical functional capacity to consistently perform the sedentary level work duties of her occupation.  Hartford's determination is supported by substantial medical evidence, Miller's documented physical activities, the administrative law judge's findings, and the opinions of Hartford's consulting physicians.  Applying the arbitrary and capricious standard, Hartford's determination that Miller failed to satisfy the Plan's definition of Disability beyond May 6, 2015 has rational support in the administrative record.  Accordingly, summary judgment should be entered for Hartford and the Plan.

## STATEMENT OF MATERIAL FACTS IN DISPUTE

**Response to Nos. 4 and 19:**[1]  Miller cites the Plan's definition of Disability, and asserts that the only condition necessary for payment of benefits under the Plan is for the definition of Disability to be met.  The last sentence in Miller's purported quote ("Disability means that any

---

[1] Defendants respond to the numbered paragraphs that they dispute in Miller's "Statement of Material Facts Not In Dispute" contained in her Brief in Support of Motion for Summary Judgment (Doc. #51).

physical or mental condition arising from an illness…") does not appear in the Plan's definition of Disability.  (Doc. #49-1, PageID #: 594).  In addition, all terms and conditions of the Plan must be satisfied for payment of benefits.  (Doc. #49-1, PageID #: 581-597).

**Response to No. 10:**  Miller claims that she "became totally disabled due to" multiple conditions, without specifying a time period.  Defendants dispute that Miller satisfied the Plan's definition of Disability beyond May 6, 2015, and dispute that Miller's purported conditions are "totally disabl[ing]," for the reasons detailed in its Memorandum and this Response.

**Response to No. 26:**  Miller asserts that Dr. Brezausek reported she had "minimal abilities" in a Physical Capacities Evaluation Form dated February 24, 2015.  However, Dr. Brezausek reported Miller had far greater than "minimal" functional abilities:  Dr. Brezausek opined that Miller could sit for "up to 8" total hours per day, stand for 4 or more hours per day, walk 4 hours per day, frequently (up to 2/3rd of the day) lift up to 10 pounds, frequently handle or finger with both hands together, and occasionally (up to 1/3rd of the day) handle or finger with one hand.  (Doc. #49-3, PageID #: 1019-20).

**Response to No. 29:**  Miller lists incomplete excerpts from Dr. Brezausek's medical records for the period June 17, 2013 through April 13, 2015 as "supportive" of her disability claim.  None of her cited records address her condition during the relevant time period of May 7, 2015 and thereafter.  Moreover, the vast majority of the statements in paragraph 29 consist of Miller's self-reports of symptoms relayed by Dr. Brezausek in the patient history or "Subjective" section of the notes, rather than clinical or objective findings by Dr. Brezausek.  Miller reported to Dr. Brezuasek on April 28, 2014 that she did not feel "safe" driving, but Dr. Brezusek did not advise her to stop driving or opine she was unable to drive.  (Doc. #49-1, PageID #: 406; Doc. #49-3, PageID #: 1161).  Although Dr. Brezausek considered the possibility of polymyalgia

rheumatica on August 27, 2014, Miller omits that on August 28, 2014, Dr. Brezausek observed that Miller's blood test results were "not in the range where she would have problems with polymyalgia rheumatica." (Doc. #49-5, PageID #: 1702). On April 13, 2015, Dr. Brezausek noted that Miller "[s]tates her hands are swollen," but she recorded in her physical exam that Miller's extremities were "normal" with "no ... edema" (swelling). On December 3, 2014, Miller reported to Dr. Brezausek that she "[h]as psoriatic arthritis," but her treating rheumatologist, Dr. Bell, advised Hartford that he found no evidence of psoriatic arthritis. (Doc. #49-1, PageID #: 413). In the records cited by Miller, Dr. Brezausek observed that Miller appeared in "no distress" on March 27, May 28, June 30, July 31, August 27, and October 1 of 2014, and April 13, 2015. (Doc. #49-4, PageID #: 1238; Doc. #49-3, PageID #: 1180, 1182, 1025, 1028, 1032; Doc. #49-2, PageID #: 796).

**Response to No. 30:** Miller inaccurately quotes portions of her June 2, 2014 lumbar spine MRI as a "supportive" record. The June 2, 2014 MRI report states, "Small central annular tear with *mild* diffuse broad disc bulge." (Doc. #49-2, PageID #: 688) (emphasis added; "mild" omitted by Miller). The MRI report does not state that she had "advanced facet arthropathy..." but rather only states "There is some *moderate to advanced* facet arthopathy L4-5 and L5-S1, but no significant foraminal narrowing is seen." (*Ibid.*) (emphasis added). Dr. Brezausek reviewed the MRI results and noted there was "nothing that is causing any narrowing around the nerves in her back." (*Ibid.*). Dr. Ibrahim Alghafeer opined that the MRI was "unremarkable" in his written report dated May 1, 2015. (Doc. #49-3, PageID #: 1002). In addition, Dr. Brezausek's physical exam findings throughout 2015 consistently note that Miller has normal range of motion of her back, including on March 12, April 13, July 23, August 19, October 8, and December 30 of 2015. (Doc. #49-2, PageID #: 772, 796, 809, 819, 825; Doc. #49-6, PageID #: 1810).

**Response to No. 33:**  Miller asserts that she "is not claiming to be disabled due to a psychiatric impairment" and that the opinions of consulting psychiatrist Marcus J. Goldman, M.D. in his May 1, 2015 report, are therefore "irrelevant."  But Miller explicitly claimed to be disabled due to a psychiatric condition throughout the administration of her claim. Consequently, it was appropriate for Hartford to consult a psychiatrist, and his opinions were relevant to Hartford's evaluation.  Miller and Dr. Brezausek consistently claimed that Miller was impaired by a psychiatric condition.  (Doc. #49-4, PageID #: 1257-58, 1254-55, 1251-52; Doc. #49-3, PageID #: 1163-64, 1078, 1014; Doc. #49-10, PageID #: 3164).  The Social Security Administration's administrative law judge approved Miller's disability claim on January 13, 2017 based on Miller's "reduced mental residual functional capacity" caused by "alleged mental impairments of depression and generalized anxiety disorder."  (Doc. #49-4, PageID #: 1467, 1465).  It was only during the administrative remand when, for the first time, Miller's counsel disclaimed any psychiatric basis for claiming disability, stating in a June 5, 2017 letter that "[w]e are not contending that Ms. Miller is disabled from a psychological disorder."  (Doc. #49-10, PageID #: 3137).

**Response to No. 36:**  Miller asserts that muscle weakness and other symptoms (which Dr. Alghafeer opined Miller did not have evidence of) are not symptoms of fibromyalgia, and that it was an "error" for Dr. Alghafeer to "insist on findings" "not relevant to fibromyalgia." However, Dr. Alghafeer reasonably considered all the medical evidence, because Miller claimed to be disabled by multiple conditions including psoriatic arthritis, osteoarthritis, chronic fatigue syndrome, chronic pain, and sleep apnea in addition to fibromyalgia.  (Doc. #49-3, PageID #: 1013-14, 1078; Doc. #49-2, PageID #: 674; Pl. Mem., pg. 2 ¶ 10).  In her October 28, 2015 appeal letter, Miller specifically claimed to be disabled by "fibromyalgia, psoriatic arthritis, sleep

apnea, chronic fatigue syndrome, osteoarthritis, and chronic pain."  (Doc. #49-2, PageID #: 674,

680).  Dr. Alghafeer, therefore, properly did not confine his evaluation solely to fibromyalgia.

Dr. Alghafeer concluded that "[f]rom a rheumatology perspective, it is my opinion that [Miller]

does not have restrictions or limitations."  (Doc. #49-3, PageID #: 1002).

     **Response to No. 38:**  Miller describes the functional limitations listed in Dr. Brezausek's

August 20, 2015 Treating Physician's Statement, including that Miller is able to work "zero"

hours per day, sit for 15 minutes at a time for no more than 1 hour per day, stand for 15 minutes

at a time for no more than 1 hour per day, walk for 15 minutes at a time for no more than 1 hour

per day, lift 5 pounds on an occasional basis, and lift no weight frequently.  Based on Dr.

Brezausek's restrictions, Miller would be essentially bedridden.  Dr. Brezausek's extreme

limitations in her August 2015 Treating Physician's Statement are contradicted by Dr.

Brezausek's February 2015 Physical Capacities Evaluation Form, in which she stated that Miller

can sit for up to 8 hours per day, stand for 4 or more hours per day, walk for 4 hours per day,

frequently lift 1-10 pounds, and occasionally lift 11-20 pounds.  (Doc. #49-3, PageID #: 1019).

Miller's medical records do not reflect any severe deterioration in her condition to warrant the

extreme limitations described in Dr. Brezausek's August 2015 Treating Physician's Statement.

To the contrary, Miller's x-rays showed no evidence of psoriatic arthritis and her clinical exams

were essentially normal except for mild tenderness in her lower back ascribed to osteoarthritis.

(Doc. #49-2, PageID #: 772-73, 796-97, 808-09, 832-33, 852, 854).  Notably, the Social Security

Administration's administrative law judge gave little weight to Dr. Brezausek's opinion of

Miller's functional capacities in her August 2015 Treating Physician's Statement because her

assessment was "too restrictive."  (Doc. #49-4, PageID #: 1468).

In paragraph 38 Miller also quotes Dr. Brezausek's August 2015 Treating Physician's Statement that Miller "has difficulty concentrating" and "Depression and anxiety levels prevents her from performing tasks correctly and impacts all her interactions."  However, Miller specifically withdrew her psychiatric disability claim and told Hartford that she is *not* disabled from a psychological disorder.  (Doc. #49-10, PageID #: 3137).  Miller thus removed the issue of potential limitations from her purported depression and anxiety from consideration.  While the administrative law judge who decided Miller's Social Security disability claim noted she had "moderate restriction in concentration, persistence and pace," he concluded it was due to her "alleged mental impairments of depression and generalized anxiety disorder."  (Doc. #49-4, PageID #: 1465, 1467).  Moreover, Dr. Brezausek's clinical records throughout 2015 contain no documented complaints of difficulty concentrating, and Dr. Brezausek consistently observed that Miller was "alert" and "cooperative."  (Doc. #49-3, PageID #: 1039-40; Doc. #49-2, PageID #: 772-73, 796-97, 808-09, 818-19, 824-25; Doc. #49-6, PageID #: 1809-11).

**Response to No. 39:**  Miller asserts that she was treated by rheumatologist Dr. Moges Sisay from 2007-2013, and that she complained of "pain and fatigue" during that time.  Dr. Sisay's 2007-2013 records are not material to the question of whether Miller satisfied the Plan's definition of Disability beyond May 6, 2015.  Miller omits reference to her last visit to Dr. Sisay on February 6, 2014, at which time Dr. Sisay noted that Miller "is seen sitting comfortably in no sign of pain," and had normal range of motion and no tenderness or swelling of any of the joints tested.  (Doc. #49-2, PageID #: 766-67).

**Response to No. 40:**  Miller lists incomplete excerpts from Dr. Brezausek's medical records dated April 13, 2015, July 23, 2015, and August 19, 2015 as "supportive" of her disability claim. The majority of the cited statements consist of Miller's self-reports of symptoms relayed by Dr.

Brezausek in the "Subjective" section of the notes.  Miller saw Dr. Brezausek on April 13, 2015

because "she needs to discuss things with me about her insurance," four days after Hartford

called Miller to inform her that it would be consulting a rheumatologist and psychiatrist who

may be contacting Dr. Brezausek to discuss her condition.  Miller complained of emesis

(vomiting) and not sleeping for the past four days (*i.e.* since Hartford's call).  She "state[d] her

hands are swollen," but Dr. Brezausek's physical exam noted "normal" extremities with no

"edema" (swelling).  (Doc. #49-2, PageID #: 796).  On July 23, 2015, Dr. Brezausek noted that

Miller complained of "increased panic attacks" and "panic is increasing," for which she was

seeing a licensed clinical social worker, Megan Halstead.  (Doc. #49-2, PageID #: 808).

However, Miller specifically informed Hartford that she is not claiming to be disabled under the

Plan due to a psychological disorder.  (Doc. 49-10, PageID #: 3137).  On August 19, 2015,

Miller saw Dr. Brezausek with "Sore throat" as her "chief complaint," and she was treated for

strep throat.  (Doc. #49-2, PageID #: 818-19).

    Miller also inaccurately states in paragraph 40 that Dr. Brezausek began "treating her

exclusively" in "2012."  Miller saw rheumatologist Dr. Sisay until February 6, 2014, and began

seeing rheumatologist Dr. Bell on August 18, 2015.  (Doc. #49-2, PageID #: 765-67, 831-34).

    **Response to No. 41:**  Miller cites to an exam by Dr. Bell which she incorrectly states took

place April 13, 2015, one month before Hartford determined she no longer satisfied the

definition of Disability.  The correct exam date is August 18, 2015, three months after Hartford's

determination.  (Doc. #49-2, PageID #: 831).  Miller inaccurately states that her C-reactive

protein level was 31 and that her liver alkaline phosphatase level was "high."  However, her C-

reactive protein level was actually 2.8, which Dr. Bell described as "mildly high," and her liver

alkaline phosphatase level was described as "*mildly* high" (emphasis added; Miller's quotes omit

"mildly").  Given Miller's "mildly high" levels on certain blood tests and her skin condition of

psoriasis, Dr. Bell observed "We know there is inflammation in the skin.  That may be the

source."  (Doc. #49-2, PageID #: 846).  After reviewing Miller's August 18, 2015 hand x-rays,

Dr. Bell observed that there was no evidence of psoriatic arthritis.  (Doc. #49-2, PageID #: 852).

**Response to No. 42:**  Miller states that she completed two physical therapy sessions in June

2014 before "she was forced to stop due to pain," and that she had "extreme difficulty driving,

putting on her socks and shoes, house work, and using the broom."  Yet despite the "extreme

difficulty" she reported with daily activities, Miller traveled to Florida for a two-week vacation

that same month, and took a trip to New York in September 2014.  (Doc. #49-4, PageID #: 1292-

93; Doc. #49-3, PageID #: 1032).  During the initial physical therapy evaluation on June 23,

2014, she had 4 to 5 out of 5 strength in all the lower extremity muscles tested.  (Doc. #49-2,

PageID #: 878).  Miller declined to return after the second physical therapy session, explaining to

Dr. Brezausek, "[w]ent to PT – but couldn't replicate the pain – so she wasn't sure that pt would

benefit from further therapy."  (Doc. #49-3, PageID #: 1182).  In addition, Miller's physical

therapy records from June 2014 are not material to the question of whether Miller satisfied the

Plan's definition of Disability beyond May 6, 2015.

**Response to No. 43:**  Miller states that she completed four aqua physical therapy sessions in

September 2015, complained of "pain all over her body," "reported that all her activities are

limited by pain," and was "discharged" after four visits.  Contrary to Miller's self-reported

limitations, her lower extremity range of motion was within functional limits, as was her lower

extremity coordination.  In tests of strength, Miller demonstrated from 4- to 4+ out of 5 for all

movements of her lower extremities and 3+ for left hip flexion and 4- for right hip flexion.  (Doc.

#49-2, PageID #: 910, 913).  Miller reported a 25% reduction in pain symptoms after four

9

sessions yet she chose to discontinue therapy, claiming that she would continue with a home exercise program "to be performed in the pool group" three days a week. (Doc. #49-2, PageID #: 919). Several months after stopping physical therapy, in early 2016 Miller began a six-month exercise regimen in preparation for bariatric surgery, including stationary bike riding (one hour daily), water aerobics (one hour 2-3 days per week), walking, and "resistance training" including weight lifting (3 days per week). (Doc. #49-8, PageID #: 2282-99). As of May 2016, she reported that she was walking 10,000+ steps per day, which is approximately five miles daily. (Doc. #49-8, PageID #: 2285).

**Response to No. 44:** Miller quotes incomplete portions of her 2012 and 2014 job performance reviews. Notably, the 2014 performance review was performed on March 5, 2014, five days before she claimed to be disabled. (Doc. #49-2, PageID #: 672). It states: "Dee fails to use her time wisely when she is at work. She is known to be in Aux work frequently and also utilizes her time doing other things besides work related items." "Dee has a tendency to be hesitant to accept when a new rule/policy has been put in place and typically refers to how things used to be with her previous boss when ultimately it is irrelevant and things just need to be accepted." "Overall Dee's quality and monthly results are average but I can tell that Dee has little interest in her position." (*Ibid.*).

**Response to No. 45:** Miller incorrectly claims that Hartford performed surveillance "*during the appeal process* in an attempt to generate more justifications for terminating the claim." (emphasis in original). However, the surveillance was actually performed in October 2014, seven months before Hartford determined that she no longer met the Plan's definition of Disability. Although Miller claimed to be extremely limited when the surveillance was performed in October 2014, she traveled to New York in September 2014, and was found to have

the functional capacity to "lift up to 10 pounds in an 8 hour day occasionally 3 hours per day,"
and "sit stand and walk frequently 3-5 hours a day in an 8 hour day" by Thomas Sonne, M.D.,
who performed an independent medical exam of Miller on November 4, 2014 on behalf of the
Social Security Administration.  (Doc. #49-3, PageID #: 1032; Doc. #49-5, PageID #: 1728-29).

**Response to No. 48:**  Miller asserts that she "is not claiming to be disabled due to a
psychiatric impairment" and that the opinions of psychiatrist Maureen Smith Ruffell, M.D. in her
December 1, 2015 report are therefore "irrelevant."  However, Miller did claim to be disabled as
a result of a psychiatric condition when submitting her claim to Hartford.  In her appeal letter
from counsel dated October 28, 2015, she quotes Dr. Brezausek who states "Depression and
anxiety levels prevents her from performing tasks correctly and impacts all her interactions," and
includes "depression" as one of her diagnoses.  (Doc. #49-2, PageID #: 678).  It was therefore
appropriate for Hartford to consult a psychiatrist during its appeal review, and her opinions were
relevant to Hartford's evaluation.  See also Defendants' Response to No. 33.

**Response to Nos. 51, 52, 53:**  In paragraphs 51, 52, and 53, Miller criticizes Hartford for
stating in its December 17, 2015 letter, "Dr. Peck and Dr. Bell agree that Ms. Miller is capable of
performing light level work on a full time basis," which Miller contends misstates Dr. Bell's
statements.  However, Dr. Peck's summary of his November 20, 2015 telephone call reflects that
Dr. Bell said that Miller "self-reported significant limitations" and that "he would be unable to be
more specific in terms of [Miller's] functional capacity."  (Doc. #49-1, PageID #: 413).  Dr. Bell
responded to the statement in Hartford's December 17, 2015 letter by writing "I do not recall
agreeing to that statement. … I do not tell patients that they can or cannot do a certain level of
work.  Patients tell me if they are able to do it, and I provide the documentation as best I can. …
Something may have been said that I would have interpreted differently."  (Doc. #49-1, PageID

#: 615).   Hartford considered and accepted Dr. Bell's clarification during the administrative

remand.   Specifically, Hartford, in its August 1, 2017 determination letter, did not rely on Dr.

Peck's recollection of his conversation with Dr. Bell.   Rather, Hartford's August 1, 2017 final

determination is supported by (i) the medical opinions of rheumatologist Dr. Benjamin

Kretzmann and internist Dr. Joshua Lewis, (ii) the absence of objective and clinical evidence

documenting work-precluding functional impairments in Dr. Bell's and Dr. Brezausek's medical

records, (iii) evidence showing that Dr. Brezausek's assessment of Miller's functional limitations

in her August 2015 Treating Physician's Statement was exaggerated and unreliable, (iv) medical

records from bariatric surgeon Dr. Steven Clark, including a completely normal examination of

Miller in March 2016, (v) Miller's participation in a rigorous daily exercise regimen in

preparation for her bariatric surgery, (vi) Miller's numerous vacation travels while claiming to be

essentially bedridden, and (vii) records from Miller's Social Security disability claim, including

the administrative law judge's finding that Miller has the functional capacity to perform

sedentary work, (viii) Dr. Sonne's November 2014 independent medical exam documenting that

Miller does not have disabling functional limitations, and (ix) the opinions of the Social Security

Administration's consulting physicians Dr. Brill and Dr. Sands, who opined that Miller can

perform sedentary work.   (Doc. #49-3, PageID #: 1032; Doc. #49-4, PageID #: 1292-93, 1296-

97, 1299-1302, 1368-69, 1372-73, 1465; Doc. #49-5, PageID #: 1727-29, 1736-38; Doc. #49-6,

PageID #:1763-65; Doc. #49-8, PageID #: 2280, 2282-99, 2401-17).

   **Response to Nos. 54, 55, 56, 57:** Miller criticizes Hartford for not noticing that two pages

were missing from her 258-page appeal packet, specifically, the first two pages of Dr.

Brezausek's August 2015 Treating Physician's Statement.   The unintentional omission of two

pages were due to a scanning error by outside vendor Xerox Services Healthcare.   (Doc. #34,

5/19/17 Order, pg. 2).  Upon learning of the two missing pages during this litigation, Hartford promptly sought an administrative remand in order to evaluate the evidence.  Miller refused to agree to a remand, and Hartford therefore was forced to file a motion for remand, which the Court granted.  (Doc. #25, Mtn for Remand; Doc. #34, 5/19/17 Order, pg. 6).  The Court stated that "the defect in the administrative record did not afford Miller a 'full and fair review," and "because it is not abundantly clear from the record that the only determination Hartford could reasonably make is that Miller is disabled, the Court grants Defendants' Motion for Administrative Remand."  (Doc. #34, 5/19/17 Order, pg. 5-6).  During the remand, Miller submitted not only the two missing pages of Dr. Brezausek's August 2015 Treating Physician's Statement, but additional medical records which nearly tripled the size of the administrative record from 972 pages to 2,815 pages.  Hartford thoroughly evaluated Dr. Brezausek's complete August 2015 Treating Physician's Statement and the additional records submitted by Miller, provided a "full and fair" review, and upheld its determination on August 1, 2017.  (Doc. #49-4, PageID #: 1343-52).  See also Defendants' Response to Nos. 51, 52, 53.

Despite Miller's claim that Dr. Brezausek's August 2015 Treating Physician's Statement was "critical" evidence of disability, the medical evidence actually showed that Dr. Brezausek's assessment of Miller's functional limitations was exaggerated and unreliable.  The Social Security Administration's administrative law judge specifically found Dr. Brezausek's assessment "too restrictive" and warranted only "limited weight."  (Doc. #49-4, PageID #: 1468). Dr. Brezausek's August 2015 Treating Physician's Statement conflicts with her February 24, 2015 Functional Capacities Evaluation, in which she opined that Miller can sit up to 8 hours during an 8-hour workday, stand 4 or more hours per day, and walk 4 hours per day.  (Doc. #49-3, PageID #: 1019-20).  Dr. Brezausek's extreme limitations are also belied by Miller's vacation

travels, including a trip to Florida in June 2014 and to New York in September 2014; and

Miller's strenuous six-month exercise regimen beginning in April 2016 including weight lifting,

walking 5 miles a day, and stationary bike riding.  (Doc. #49-4, PageID #: 1292-93, 1296-97,

1299-1302; Doc. #49-2, PageID #: 1032; Doc. #49-8, PageID #: 2282-99).

**Response to No. 58:**  Miller asserts that the Court found Hartford to be "arbitrary and

capricious" and remanded the case.  Hartford, however, specifically requested an administrative

remand—over Miller's objection—in order to evaluate certain pages of Dr. Brezausek's August

2015 Treating Physician's Statement, which were unintentionally omitted from the

administrative record due to a scanning error by outside vendor Xerox.  (Doc. #25, Mtn for

Remand, pg. 2).  The Court granted Hartford's request for an administrative remand, stating,

"The Court concludes, and Defendants acknowledge, that the defect in the administrative record

did not afford Miller a 'full and fair review.'"  (Doc. #34, 5/19/17 Order, pgs. 5-6).  The Court

noted that the reason for the missing pages was "due to the mistake of Xerox."  (Doc. #34,

5/19/17 Order, pgs. 5).

**Response to No. 59:** Miller quotes incomplete excerpts from the decision of the Social

Security Administration's administrative law judge.  Importantly, the administrative law judge

found that Miller has the functional capacity to perform sedentary work:  "The claimant has the

residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except

the claimant can occasionally climb ladders, ropes, scaffolds, ramps and stairs, and can

occasionally balance, stoop, kneel, crouch, and crawl."  (Doc. #49-4, PageID #: 1465).  The

administrative law judge gave little weight to Dr. Brezausek's opinions in the August 2015

Treating Physician's Statement, finding her opinions "too restrictive" and warranting only

"limited weight."  (Doc. #49-4, PageID #: 1468).  The administrative law judge awarded Social

Security disability income benefits based on his finding that Miller's psychiatric conditions of depression and anxiety reduced her mental functioning to unskilled work rather than the semiskilled work of her prior job.  (Doc. #49-4, PageID #: 1465, 1467, 1471).  Miller, however, informed Hartford that she was not contending she was disabled under the ERISA Plan due to a psychological disorder.  (Doc. #49-10, PageID #: 3137).  The administrative law judge based his findings in part on Miller's hearing testimony on September 29, 2016, at which she testified that she could walk for only "one eighth of a mile."  (Doc. #49-4, PageID #: 1466).  Yet less than one week after the hearing, Miller was regularly walking "10,000+" steps daily—the equivalent of 5 miles per day—as documented by a pedometer, according to the records of her weight-loss dietitian.  (Doc. #49-8, PageID #: 2299).

**Response to No. 62:**  Miller cites to a statement from Dr. Sisay dated April 18, 2009.  Dr. Sisay's 2009 statement, five years before Miller ceased work and submitted her disability claim to Hartford, and six years before Hartford determined she no longer satisfied the Plan's definition of Disability, is irrelevant and immaterial to whether Miller satisfied the Plan's Your Occupation definition of Disability beyond May 6, 2015.

**Response to No. 63:** Miller lists incomplete excerpts from Dr. Brezausek's medical records dated from December 30, 2015 to August 11, 2016 as "supportive" of her disability claim.  The cited statements consist solely of Miller's self-reports of symptoms relayed to Dr. Brezausek in the "Subjective" section of her medical records.  On December 30, 2015, when Miller complained of pain medicine not helping, and "can hardly bend her fingers," Dr. Brezausek declined to increase her pain medication, and documented that Miller appeared in "no distress" and her physical exam was normal including "Extremities normal."  (Doc. #49-6, PageID #: 1812, 1810).  On March 24, 2016, Dr. Brezausek's physical exam findings again were normal

15

with normal range of motion of the back.  (Doc. #49-6, PageID #: 1804-05).  On June 3, 2016,

Dr. Brezausek ordered lab tests, which were completely normal, and Dr. Brezausek commented

"labs look good."  (Doc. #49-6, PageID #: 1798-99, 1783).  On August 11, 2016, Dr. Brezausek

opined, based on her physical exam, that Miller was in "no distress" and her exam findings were

normal. (Doc. #49-6, PageID #: 1772-73).  Notably, in early 2016 Miller began an extensive

exercise regimen in preparation for bariatric surgery, including weight lifting, walking 5 miles a

day, and stationary bike riding.  (Doc. #49-8, PageID #: 2282-99).

**Response to No. 64:**  Miller lists incomplete portions of Dr. Bell's medical records from

August 18, 2015 through July 20, 2016.  During this same time period, Miller was engaged in a

strenuous exercise program in order to qualify for bariatric surgery, which was performed in

December 2016.  (Doc. #49-8, PageID #: 2282-99).  By July 2016, Miller reported to her

dietician that her current exercise regimen included walking 13,000+ steps a day, an hour of

water aerobics 2 to 3 days a week, half an hour of weights three days a week, and an hour of

walking, biking, or riding an elliptical machine.  (AR 01938).  After July 20, 2016, Miller saw

Dr. Bell for a final time on January 16, 2017, at which time Dr. Bell noted that Miller "does not

want to pursue further evaluation of possible sacroillitis at this time," "[s]he is not interested in

the biologic treatments now," and her psoriasis was in remission.  (AR 02411).

**Response to No. 66:**  Miller quotes from Dr. Brezausek's May 25, 2017 Treating Physician's

Statement.  Like in the August 2015 Treating Physician's Statement, Dr. Brezausek lists extreme

and exaggerated functional limitations, including sitting, standing and walking for no more than

15 minutes at a time, for less than one hour per day for each activity.  Dr. Brezausek's extreme

limitations in her May 2017 and August 2015 Treating Physician's Statements are refuted by

Miller's strenuous exercise regimen in 2016 including stationary bike riding (one hour daily),

water aerobics (one hour 2-3 days per week), walking, and "resistance training" including weight lifting (3 days per week).  (Doc. #49-8, PageID #: 2282-99).  On May 22, 2017, three days before Dr. Brezausek signed her May 25, 2017 Treating Physician's Statement, Miller was examined by Dr. Clark following her bariatric surgery.  Dr. Clark observed "The patient is not having any pain."  In his "Review of Systems," he noted that Miller "Denies fatigue," "No problems with … weakness," and "No myalgias or arthralgias" (pain in the muscles or joints).  (Doc. #49-8, PageID #: 2331-33).  He opined that she was "[d]oing well postoperatively" and advised her to "increase activities as tolerated."  (*Ibid.*).  The extreme limitations and pain described in Dr. Brezausek's May 25, 2017 Statement are refuted by Dr. Clark's clinical exam findings on May 22, 2017.

**Response to Nos. 67, 68:**  Miller quotes from Dr. Brezausek's August 16, 2016 letter and Dr. Brezausek's August 17, 2016 "Fibromyalgia Residual Functional Capacity Questionnaire" that Miller submitted to the Social Security Administration.  Dr. Brezausek reiterated the same extreme and exaggerated limitations that appear in her August 2015 and May 2017 Treating Physician's Statements, including sitting, standing and walking for no more than 15 minutes at a time, for less than one hour per day for each activity.  The extreme limitations are refuted by Miller's exercise in 2016 in preparation for her bariatric surgery, including stationary bike riding (one hour daily), water aerobics (one hour 2-3 days per week), walking, and "resistance training" including weight lifting (3 days per week).  (Doc. #49-8, PageID #: 2282-99).

**Response to No. 72:**  Miller cites to incomplete portions of Dr. Kretzmann's and Dr. Lewis's written reports.  Dr. Kretzmann and Dr. Lewis thoroughly evaluated the medical evidence, including clinical exam findings, diagnostic tests, and objective x-ray images, and reached well-supported conclusions in their written reports.  (Doc. #49-8, PageID #: 2401-17; Doc. #49-4,

PageID #: 1368-69, 1372-73).  Dr. Kretzmann is a board certified rheumatologist who specializes in psoriatic arthritis, fibromyalgia, and osteoarthritis,[2] and Dr. Lewis is board certified in internal medicine.  (Doc. #49-8, PageID #: 2409, 2415).  Dr. Kretzman opined that the "physical examination findings from Dr. Brezausek, Dr. Bell, and PT [physical therapy] suggest continued functionality."  He opined that Miller "is mildly functionally limited due to deficits of strength in her lower extremities" and "decreased grip strength," but "[t]here is no evidence to support total work activity restriction due to Fibromyalgia, as the treatment of this condition includes normal, scheduled activity with the avoidance of narcotics for pain management."  (Doc. #49-8, PageID #: 2408).  Dr. Lewis acknowledged Miller's subjective complaints of pain, but opined "there is no documentation of objective functional deficits that would support the restriction of 'no work.'"  (Doc. #49-8, PageID #: 2414).  Dr. Kretzmann and Dr. Lewis concurred that from May 7, 2015 and thereafter Miller "is capable of consistently and reliably performing work activities for 8 hours per day, 5 days per week, for 40 hours per work week," with the ability to sit "unrestricted for 8 hours a day in an 8-hour workday with the ability to change positions for comfort," stand and walk occasionally, and lift/carry/push/pull 10 pounds frequently and 20 pounds occasionally.  (Doc. #49-8, PageID #: 2416, 2414, 2407).

## ARGUMENT

### I.    Miller Fails to Properly Apply the Arbitrary and Capricious Standard.

Miller concedes that Hartford's determination is reviewed by the Court through the lens of the arbitrary and capricious standard.  Yet she conflates deferential judicial review under the arbitrary and capricious standard into *de novo* judicial review.  She implores the Court to

---

[2]  See http://www.centerforrheumatology.com/dr-benjamin-kretzmann/

"weigh" the evidence, but to do so with a thumb on the scale in her favor, by presumptively giving "significant weight" to the opinions of her family physician, Dr. Brezausek, simply because Dr. Brezausek is her treating physician.  She proclaims that Dr. Brezausek's opinions embody "the best" and "most accurate" medical evidence.  (Pl. Mem. pgs. 28, 30).

Miller's "best evidence" and "significant weight" arguments are simply euphemisms for *de novo* judicial review.  See *Fischer v. Liberty Life Assur. Co. of Boston*, 576 F.3d 369, 376 (7th Cir. 2009) ("What Fischer is essentially arguing is that Liberty's decision can be upheld only if a preponderance of the evidence, or something like that, supports it.  As the district court correctly recognized on reconsideration, however, that is not the standard.").

Miller's entreaty for the Court to weigh the medical evidence violates principles of deferential judicial review.  There should be no judicial weighing of the medical evidence.  The arbitrary and capricious standard leaves questions of medical judgment, including the weight and sufficiency of the medical evidence, to the discretion of the administrator.  "Questions of judgment are left to the plan administrator and it is not [the court's] function to decide whether [it] would reach the same conclusion as the administrator."  *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005).  "[U]nder the arbitrary and capricious standard, neither this Court, nor the district court, will attempt to make a determination between competing expert opinions."  *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 812 (7th Cir.), *cert. denied*, 549 U.S. 942 (2006)).

Applying the arbitrary and capricious standard, the administrator's determination prevails as long as it has "rational support in the record."  "[T]he reviewing court 'does not ask whether the administrator reached the correct conclusion or even whether it relied on the proper authority.  Instead, the only question for the court is whether the administrator's decision was completely

unreasonable.'" *Kobs v. United Wis. Ins. Co.*, 400 F.3d 1036, 1039 (7th Cir.), *cert. denied*, 546

U.S. 1033 (2005).  Whether the court would reach the same conclusion as the administrator "is

irrelevant." *Wagner v. Allied Pilots Ass'n Disability Income Plan*, 383 Fed.Appx. 565, 570 (7th

Cir. 2010).  See also *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1147 (7th Cir. 1998) (the

administrator's reasonable decision prevails, and courts "will not second-guess whether the

decision is right").

Hartford evaluated all the medical evidence and articulated a rational explanation for its

determination that Miller failed to satisfy the Your Occupation definition of Disability beyond

May 6, 2015.  No more is needed to surpass judicial review under the arbitrary and capricious

standard.  See *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 362 (7th Cir. 2017) ("the reviewing

court must ensure only that a plan administrator's decision has rational support in the record")

(quoting *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011)); *Semien*,

436 F.3d at 813 ("Where an insurance plan gives discretionary authority to a plan administrator,

ERISA provides a limited Article III review.").

## II.    Hartford Reasonably Determined that Miller Failed to Satisfy the Plan's "Your Occupation" Definition of Disability.

### A.    Hartford's determination has rational support in the administrative record.

Hartford obtained an administrative remand in order to evaluate Dr. Brezausek's August 2015

Treating Physician's Statement, several pages of which were unintentionally omitted from the

administrative record due to a scanning error by outside vendor Xerox.  Miller's counsel

described those missing pages as "critical" evidence of disability, yet she vehemently opposed an

administrative remand in an attempt to thwart Hartford's full and fair review.  When the Court

granted Hartford's request for a remand, Hartford evaluated Dr. Brezausek's assessment of

Miller's functional capacities and, although not required by the Court's remand order, permitted

Miller to submit substantial additional evidence for consideration including her entire Social Security disability file.

Dr. Brezausek, in her August 2015 Treating Physician's Statement, notes extreme limitations in Miller's ability to perform any sustained activity.  She opined that Miller was unable to sit, stand, or walk more than 15 minutes at a time totaling no more than 1 hour per day, and had difficulty moving her neck or using her fingers and hands.  (Doc. #49-10, PageID #: 3164). According to Dr. Brezausek, Miller was essentially bedridden.

Dr. Brezausek's extreme assessment of Miller's functional limitations lacks clinical or objective support in the medical records, was rejected as excessive and unreliable by the Social Security Administration's administrative law judge, and is undisputedly inconsistent with Miller's documented activities.  When a treating physician's opinions are exaggerated and unsupported by clinical or objective documentation, it is reasonable for an ERISA administrator to discredit those opinions.  See *Kay v. Consolidated Route, Inc., Plan No. 510*, No. 04 C 6562 , 2005 WL 2978946, at *6 (N.D. Ill. Nov. 3, 2005) (holding that the treating physician's "restrictions are so severe as to be unreliable on their face" and "suggest that Kay was essentially bedridden at the time the evaluation was performed, though this undisputedly was not the case").

Miller's contemporaneous medical records fail to clinically document the extreme functional limitations advocated by Dr. Brezausek.  Dr. Brezausek's physical exam findings on July 23, 2015, August 19, 2015 (when Miller's "chief complaint" was a "sore throat"), and October 8, 2015 were essentially normal, including normal range of motion of the back, neck, and all extremities and no neurologic deficits.  (Doc. #49-2, PageID #: 808-09, 818-19, 824-25).

Medical records from treating rheumatologist Dr. Bell establish that Miller had no inflammation and no significant limitation in her hands, fingers, wrists, elbows, knees, ankles,

feet, or shoulders.  (Doc. #49-2, PageID #: 833, 838).  Although Dr. Bell, as a rheumatologist, is

the appropriate medical specialist to evaluate and treat fibromyalgia, psoriatic arthritis, and

osteoarthritis, he never opined that Miller was disabled or functionally impaired by any

rheumatologic condition.  To the contrary, Dr. Bell rebuffed a request from Miller's attorney to

sign a statement that "your patient cannot work 8 hours a day, 5 days a week."  (Doc. #49-5,

PageID #: 1677).

By contrast, Dr. Brezausek, as a general family physician, lacks expertise in the evaluation of

rheumatologic conditions.  Yet Dr. Brezausek was the only physician to opine that Miller was

disabled.  See *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 607-08 (7th Cir. 2007) (holding that the

administrator reasonably discounted the opinions of the plaintiff's treating family physician,

noting that "nothing in the record indicated that Mote's primary care physician, Dr. West, has any

particular expertise in fibromyalgia).  See also *Oxford v. Anthem Life Ins. Co.*, No. 1:11-cv-

00507-TWP-DML, 2012 WL 4390254, at *13 (S.D. Ind. Sept. 25, 2012) (holding that the

administrator reasonably rejected a treating physician's opinion of disability when the medical

records were not "overwhelmingly" supportive of disability); *Garvey v. Piper Rudnick LLP Long

Term Dis. Ins. Plan*, No. 08 C 1093, 2012 WL 1079966, at *10 (N.D. Ill. Mar. 30, 2012) (ERISA

administrator reasonably discounted the treating physician's disability determination "as the

information conveyed in [his] own contemporaneous session notes belie the disability

determination").

Hartford reasonably determined that Miller failed to provide reliable clinical and objective

evidence that she continuously satisfied the Plan's Your Occupation definition of Disability

beyond May 6, 2015.  It is reasonable for an ERISA administrator to require "accurate

documentation" of the plaintiff's functional limitations.  *Williams v. Aetna Life Ins. Co.*, 509 F.3d

317, 323-24 (7th Cir. 2007).  Dr. Brezausek's assessment of Miller's functional limitations was

exaggerated, unsupported by clinical and objective medical evidence, and therefore was

appropriately discredited by Hartford.

### 1.    Hartford's determination is supported by the findings of the administrative law judge.

The Social Security Administration's findings provide further support for Hartford's

determination.  The Social Security Administration's administrative law judge found that Miller

has the functional capacity to perform at least sedentary level work as defined in 20 CFR

404.1567(a) and that she can occasionally climb ladders, ropes, scaffolds, ramps and stairs, and

occasionally balance, stoop, kneel, crouch, and crawl.  (Doc. #49-4, PageID #: 1465).  Notably,

the administrative law judge found that Dr. Brezausek's August 2015 Treating Physician's

Statement—which Miller touts in her Memorandum as "critical" evidence of disability—was

"too restrictive" and warranted only "limited weight."  (Doc. #49-4, PageID #: 1468).

Miller, in her Memorandum, argues that the administrative law judge's findings support her

disability claim in this case.  She denounces Hartford for "rejecting" the Social Security award.

(Pl. Mem. pgs. 31-32).  She fails to acknowledge that the administrative law judge found she was

limited to performing unskilled sedentary work due to "reduced mental functioning" from her

"psychiatric conditions of depression and anxiety."  (Doc. #49-4, PageID #: 1465, 1467).  During

the administrative remand, Miller's counsel removed the issue of potential psychiatric limitations

from consideration of her ERISA claim, and specifically instructed Hartford that "We are not

contending that Ms. Miller is disabled from a psychological disorder."  (Doc. #49-4, PageID #:

3137).

Contrary to Miller's argument that Hartford rejected the administrative law judge's findings, Hartford specifically relied on the findings and explicitly said so in its August 2017 final determination letter, stating:

> According to the "Order of Administrative Law Judge," signed by Judge Jason R. Yoder on January 13, 2017, Dee Miller "… has the residual functional capacity to perform sedentary work …."  The Hartford has also found that Ms. Miller is capable of at least Sedentary physical demand work and that her occupation (as performed in the general workplace) is a Sedentary occupation.

(Doc. #49-4, PageID #: 1351).

Additionally, Miller demonstrated that she possessed significantly greater functionality than she and Dr. Brezausek claimed.  Despite testifying before the administrative law judge on September 29, 2016 that she could only walk for "one eighth of a mile," less than one week later she was regularly walking "10,000+" steps daily—the equivalent of 5 miles daily—as measured on a pedometer.  (Doc. #49-4, PageID #: 1466; Doc. #49-8, PageID #: 2299).  At the time she gave her testimony, Miller was engaged in a strenuous weight-loss exercise regimen consisting of stationary bike riding (one hour daily), water aerobics (one hour 2-3 days per week), daily walking (5 miles per day measured by a pedometer), and "resistance training" including weight lifting (3 days per week), a program she began in April 2016.  (Doc. #49-8, PageID #: 2282-99).  Even when Miller initially claimed to be disabled in 2014, she demonstrated far greater functionality than she claimed.  She embarked on numerous vacation travels to New York City where she shopped all day and enjoyed the Rockettes, numerous beach trips including Aruba and Florida, she toured Nashville with friends, and in September 2014 she enjoyed another trip to New York City.  (Doc. #49-4, PageID #: 1292-93, 1296-97, 1299-1302; Doc. #49-3, PageID #: 1032).

Accordingly, the administrative law judge's findings and Miller's documented activities provides further support for Hartford's determination.

### 2.    Hartford reasonably relied on the medical opinions of qualified consulting physicians who evaluated the medical evidence.

Hartford consulted a specialist in rheumatology, Dr. Kretzmann, and an internal medicine specialist, Dr. Lewis, who carefully evaluated the objective evidence and clinical findings, and considered Miller's subjective reports of pain and fatigue.  In addition, Drs. Kretzmann and Lewis evaluated the findings of the Social Security Administration including the agency's consulting physicians who performed independent medical examinations of Miller.  Drs. Kretzmann and Lewis concurred that Dr. Brezausek's assessment of Miller's functional limitations were unsupported by the medical evidence and that Miller has the functional capacity to consistently perform sedentary to light level work.

The Seventh Circuit consistently has held that it is reasonable for an ERISA administrator to rely on the opinions of consulting physicians who review the medical file.  *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir.), *cert. denied*, 549 U.S. 884 (2006).  "In such file reviews, doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation."  *Id.*  See also *Marantz v. Permanente Medical Group, Inc. Long Term Disability Plan*, 687 F.3d 320, 335 (7th Cir. 2012) (consulting physicians are "able to render adequately an expert opinion without direct examination"); *Wiseman v. Prudential Ins. Co. of Am.*, No. 1:12-cv-01337-SEB-DML, 2014 WL 4753692, at *17 (S.D. Ind. Sept. 24, 2014) (acknowledging "it is well-established under Seventh Circuit law that reliance on a file review by an independent, qualified physician is not inherently or necessarily arbitrary and capricious").

Miller nevertheless insists that Dr. Brezausek's opinion of disability is unassailable.  She argues that treating physicians possess "superior information" and are "more informed" than an ERISA administrator's consulting physicians, citing dictum in *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 917 (7th Cir. 2003).  (Pl. Mem. pgs. 27, 28, 30).  The *Hawkins* court called Miller's same argument a "bad argument," noting that treating physicians may be unreliable in evaluating disability in ERISA cases because they tend to lose their objectivity and become patient advocates.  *Id.*  "The Seventh Circuit has long recognized that the opinions of personal physicians regarding their patients' alleged disabilities are often biased in the patient's favor, making those opinions less trustworthy."  *Kuznowicz v. Wrigley Sales Co., LLC*, No. 11 C 165, 2013 WL 4052381, at *17 (N.D. Ill. Aug. 12, 2013) (citing *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011) ("the treating source may not be an expert on the claimant's condition and, at worst, may bend over backwards to assist a patient in obtaining benefits")).  See also *Davis*, 444 F.3d at 578 (observing that the treating physician acted "more as an advocate than a doctor rendering objective opinions").

The *Hawkins* court was commenting on the applicability of the Social Security regulation's "treating physician rule" to ERISA disability cases, and noted that "maybe the Supreme Court will resolve it in the *Nord* case."  *Hawkins*, 326 F.3d at 917.  And the Supreme Court did resolve the issue in *Nord* by refusing to "accord special weight to the opinions of a claimant's physician" or "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).  *Nord* prohibits evidentiary presumptions in ERISA cases, whether phrased in terms of giving more weight to treating physician opinions or less weight to consulting physician opinions.

26

Miller's argument that Dr. Brezausek's opinions merit special weight contravenes Supreme Court and Seventh Circuit authority.  See *Mote*, 502 F.3d at 607 ("finding that "the Plan did not act improperly when it looked to, and credited, evidence that conflicted with the Plaintiff's treating physicians' opinions").

### 3.   Hartford reasonably determined that Miller lacked objective or clinical evidence of a disabling functional impairment due to fibromyalgia.

Miller, in her Memorandum, argues that Hartford abused its discretion by "rejecting" her complaints and chronic fibromyalgia pain simply because pain is subjective.  (Pl. Mem. pgs. 33-34).  But under ERISA, disability claimants must satisfy their burden of proof with clinical findings and objective evidence that establish ongoing work-precluding functional deficits.  "ERISA plans would be open to fraudulent abuse if all that was needed to prevail and receive benefits was a claimant's subjective statement that she cannot work."  *White v. Standard Ins. Co.*, 895 F.Supp.2d 817, 848 (E.D. Mich. 2012), *aff'd*, 529 Fed.Appx. 547 (6th Cir. 2013).

Hartford never rejected Miller's complaints of fibromyalgia pain.  Rather, Hartford determined that the medical evidence failed to document that her symptoms caused functional limitations that precluded her from working in her Occupation, as Hartford explained in its August 1, 2017 final determination letter:

> Although Dee Miller has complained to her physicians of physical and cognitive symptoms and has been provided with multiple diagnoses throughout the years, the medical documentation does not support that she is medically precluded from engaging in the essential duties of her occupation as it is performed in the general workplace.

(Doc. #49-4, PageID #: 1351).  Hartford specifically requested that Drs. Kretzmann and Lewis "take into consideration [Miller's] subjective complaints as well as the objective medical information" and discuss "how they impact her work functionality[.]"  (Doc. #49-4, PageID #: 1345).  Dr. Kretzmann acknowledged Miller's pain and "self reported deficits" but concluded

27

that Dr. Brezausek's assessment of her functional limitations was "not supported by the objective evidence."  (Doc. #49-8, PageID #: 2406).  Similarly, Dr. Lewis acknowledged Miller's "subjective complaints of chronic pain" but concluded "there is no documentation of objective functional deficits that would support the restriction of 'no work.'"  (Doc. #49-8, PageID #: 2414).

Requiring evidence of functional deficits is a practice authorized by the Seventh Circuit. Although fibromyalgia pain is largely subjective, functional deficits due to pain can be objectively measured.  "A distinction exists … between the amount of fatigue or pain an individual experiences, which … is entirely subjective, and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured."  *Williams*, 509 F.3d at 322.  The inherently subjective nature of fibromyalgia pain "does not bar reviewers from requiring accurate documentation from a treating physician that the claimant's subjective symptoms of pain or fatigue limit his functional abilities in the workplace."  *Id.* at 323.

Miller's counsel made the same flawed "subjective pain" argument in *Trice v. Lilly Employee Welfare Plan*, No. 1:12-202-JMS-DKL, 2013 WL 6804749, at *9 (S.D. Ind. Dec. 19, 2013), and the district court rejected her argument.  The district court admonished that plaintiff "ignores Seventh Circuit" authority in *Williams* holding that functional deficits due to pain can be objectively measured.  See also *Wiseman*, 2014 WL 4753692, at *16 ("The reason Prudential denied Ms. Wiseman's claim was not because she failed to produce objective evidence that she suffers from fibromyalgia and chronic pain, but because she failed to produce objective evidence that her fibromyalgia and chronic pain cause functional restrictions or impairments that would prevent her from performing her position.").

28

Miller, in her Memorandum, incorrectly depicts fibromyalgia as her sole basis for claiming disability. She argues that Hartford, in declining her disability claim, unreasonably relied on "normal" medical findings including normal x-rays of her hands and hips, normal MRIs of her lumbar spine, and the absence of swelling in any of her joints, all of which she contends are irrelevant to fibromyalgia. (Pl. Mem. pgs. 29-30, 32-33).

Miller, however, claimed disability due to psoriatic arthritis, osteoarthritis, and depression in addition to fibromyalgia, and her counsel expressly said so in her October 28, 2015 letter requesting an administrative appeal. (Doc. #49-2, PageID #: 674). It is disingenuous for Miller to claim to be disabled due to multiple conditions including psoriatic arthritis and osteoarthrosis, and then criticize Hartford for evaluating those conditions. Hartford and its consulting physicians, therefore, appropriately evaluated all the medical evidence including the objective and clinical findings.

Hartford reasonably determined that Miller failed to satisfy the Plan's Your Occupation definition of Disability beyond May 6, 2015, and that she was not entitled to waiver of premiums for life and accidental death coverage based on her failure to satisfy the definition of Disability. Hartford's determination has rational support in the administrative record, including the medical opinions of Drs. Kretzmann and Lewis, the administrative law judge's finding that Miller can perform full-time sedentary level work, the absence of objective or clinical findings that Miller's conditions preclude her from working in her Occupation, and Miller's demonstrated ability to perform activities far more strenuous than Miller claimed and Dr. Brezausek claimed.

**B.    There is no burden-shifting presumption of disability when an ERISA administrator terminates benefits.**

Miller bears the burden of proving she continuously satisfied the Plan's Your Occupation definition of Disability beyond May 6, 2015 through the end of the 24-month Your Occupation

benefit period on September 7, 2016, and that Hartford's determination to decline her claim lacked rational support and was "arbitrary and capricious."  See *Cheney v. Standard Ins. Co.*, 831 F.3d 445, 451 (7th Cir. 2016) (holding that "doubts or gaps in the evidence" should be resolved against the plaintiff because she "had the burden to demonstrate policy coverage"); *Frye v. Thompson Steel Co., Inc.*, 657 F.3d 488, 495 (7th Cir. 2011) ("To prevail, Mr. Frye had to demonstrate that there was no 'rational support in the record'" for the administrator's determination.) (quoting *Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627, 632 (7th Cir. 2010)).

Miller endeavors to circumvent her burden of proof and impose a burden on Hartford to *disprove* her disability claim.  She argues that Hartford, after initially approving her disability claim, cannot terminate benefits without proof her medical condition improved.  (Pl. Mem. pgs. 26-27).

Miller's presumptive disability theory expressly has been rejected by the Seventh Circuit.  A prior grant of benefits "does not create a presumptive burden for the plan to overcome."  *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823 (7th Cir. 2009) (citation omitted).  "Proof of improvement in condition is not necessarily required for the Disability Plan to change its mind as to Plaintiff's disability status."  *Aschermann v. Aetna Life Ins. Co.*, No. 1:10-cv-00433-LJM-MJD, 2011 WL 6888840, at *13 (S.D. Ind. Dec. 30, 2011), *aff'd*, 689 F.3d 726 (7th Cir. 2012) (citation omitted).  See also *Geiger*, 845 F.3d at 364 (An ERISA administrator is "entitled to seek and consider new information and, in appropriate cases, to change its mind.").

When Miller submitted her disability claim to Hartford in March 2014, she complained of psychiatric symptoms of depression due to stress "from her daughter attempting to commit suicide," which purportedly exacerbated her psoriatic arthritis, osteoarthritis, and fibromyalgia pain.  (Doc. #49-4, PageID #: 1258).  When Hartford spoke with Miller on May 21, 2014, she

expressed thoughts of suicide, which Hartford immediately relayed to Dr. Brezausek.  (Doc. #49-4, PageID #: 1199-1200).  Dr. Brezausek told Hartford that Miller could "barely" perform basic activities of daily living and could not even work "0" hours per day.  (Doc. #49-3, PageID #: 1164).  Hartford initially approved Miller's disability claim based on her psychiatric symptoms and associated chronic pain.

Hartford subsequently learned through social media that Miller was significantly more physically active than she and Dr. Brezausek had reported.  While purportedly bedridden and struggling to perform basic activities of daily living, Miller enjoyed numerous vacation travels including multiple shopping expeditions to New York City.  This evidence prompted Hartford to obtain updated medical records and consult highly qualified physicians in the fields of psychiatry, internal medicine, and rheumatology.  When the medical evidence demonstrated that Miller failed to satisfy the definition of Disability, Hartford appropriately declined to pay further benefits beyond May 6, 2015.  See *Mote*, 502 F.3d at 606-607 ("[W]e have found that '[t]he administrator of a pension fund does not act arbitrarily and capriciously when he changes a previous decision because the facts known to the plan have changed [.]") (quoting *Militello v. Central States, S.E. & S.W. Areas Pension Fund*, 360 F.3d 681, 690 (7th Cir.), *cert. denied*, 543 U.S. 869 (2004)).

Hartford's ongoing evaluation of Miller's disability claim is consistent with its duty to all Plan participants to ensure that benefits are paid only to claimants who are entitled to receive them.  Indeed, ERISA administrators have a duty to all plan participants "to investigate claims and make sure to avoid paying benefits to claimants who are not entitled to receive them." *Davis*, 444 F.3d at 575.

31

Hartford, therefore, acted reasonably in performing an ongoing evaluation of Miller's eligibility for benefits and in declining to pay further benefits when the medical evidence no longer supported her disability claim. *Mote*, 502 F.3d at 608-609 ("Accordingly, the Plan would have been remiss if it did not investigate Mote's long-term disability claim, and its use of independent experts and medical consultants not only was justified, but consistent with its duty to investigate.").

### III.   A Structural Conflict of Interest Does Not Transform Hartford's Reasonable Determination into an Arbitrary and Capricious Determination.

A conflict of interest is "one factor among many" for a court to consider in determining whether an ERISA administrator abused its discretion. *Geiger*, 845 F.3d at 365 (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008)). It is not the existence of a conflict—"which is a given in almost all ERISA cases"—but the "gravity" of the conflict that is important. *Id.* A conflict of interest might act as a "tiebreaker" in a close case where the circumstances suggest that the administrator's determination was "decisively influenced" by the conflict. *Marrs v. Motorola, Inc.*, 577 F.3d 783, 789 (7th Cir. 2009). Conflicts "carry less weight when the insurer took active steps to reduce potential bias and to promote accuracy." *Geiger*, 845 F.3d at 365 (quoting *Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076, 1082 (7th Cir. 2012)).

Miller, in her Memorandum, hails procedural reasonableness as "the cornerstone" of an abuse of discretion inquiry. (Pl. Mem. pg. 24). But she fails to present any evidence that Hartford's determination was decisively influenced by a conflict of interest. Nor has Miller presented overwhelming medical evidence that Hartford purportedly failed to consider.

If there were any doubt about Hartford's unbiased conduct, that doubt would be dispelled by Hartford's actions in affirmatively requesting and obtaining an administrative remand consistent with its obligation to provide a full and fair review of Miller's disability claim. During the

administrative remand, Hartford not only considered the missing pages of Dr. Brezausek's August 2015 Treating Physician's Statement—Miller's "critical" evidence of disability—but also permitted Miller to supplement the administrative record with substantial additional medical evidence including her entire Social Security file.  As a result, the administrative record nearly tripled in size from approximately 970 pages pre-remand to its current length of 2,835 pages.

Hartford provided Miller with a full and fair review of her disability claim, consulted two highly qualified physicians who were not involved in the disability claim pre-remand, solicited comments from Miller's treating physicians, and reasonably determined that she failed to satisfy the Plan's definition of Disability beyond May 6, 2015.

## CONCLUSION

Applying the arbitrary and capricious standard, Hartford's determination that Miller failed to satisfy the Plan's Your Occupation definition of Disability beyond May 6, 2015 has rational support in the administrative record and should be upheld.  Summary judgment should be entered for Hartford and the Plan including an award of attorneys' fees and costs under 29 U.S.C. §1132(g) and the Federal Rules of Civil Procedure.

Respectfully submitted,

Warren von Schleicher (IL- 6197189)
SMITH | VON SCHLEICHER + ASSOCIATES
180 N. LaSalle St. Suite 3130
Chicago, Illinois 60601
P  312.541.0300  | F  312.541.0933
warren.vonschleicher@svs-law.com

By:  */s/ Warren von Schleicher*
Attorney for Defendants,
Hartford Life & Accident Insurance Company, and
Group Long Term Disability Plan for Employees of
Springleaf Finance, Inc.

**CERTIFICATE OF SERVICE**

I certify that on May 18, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record listed below:

    Bridget O'Ryan
    O'Ryan Law Firm
    1901 Broad Ripple Avenue
    Indianapolis, Indiana 46220
    boryan@oryanlawfirm.com

                */s/ Warren von Schleicher*
                SMITH | VON SCHLEICHER + ASSOCIATES
                180 N. LaSalle Street Suite 3130
                Chicago, Illinois  60601
                P  312.541.0300  | F  312.541.0933
                warren.vonschleicher@svs-law.com
                Ill. Bar No. 6197189