# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **DEE ANN MILLER** | ) | |
| | ) | **Case No. 1:16-cv-00166-TWP-DLP** |
| *Plaintiff* | ) | |
| | ) | **Judge Tanya Walton Pratt** |
| *v.* | ) | |
| | ) | **Magistrate Judge Doris L. Pryor** |
| **HARTFORD LIFE & ACCIDENT** | ) | |
| **INSURANCE COMPANY and SPRINGLEAF** | ) | |
| **FINANCE, INC. DISABILITY PLAN** | ) | |
| | ) | |
| *Defendants* | ) | |

---

**HARTFORD LIFE & ACCIDENT INSURANCE COMPANY'S AND**
**GROUP LONG TERM DISABILITY PLAN FOR**
**EMPLOYEES OF SPRINGLEAF FINANCE, INC.'S**
**REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

---

Warren von Schleicher (IL – 6197189)
SMITH | VON SCHLEICHER + ASSOCIATES
180 North LaSalle St. Suite 3130
Chicago, Illinois 60601
P  312.541.0300  |  F  312.541.0933
warren.vonschleicher@svs-law.com

## TABLE OF CONTENTS

Table of Authorities................................................................................................... iii

Introduction..................................................................................................................1

Argument .....................................................................................................................2

I.      Hartford's Determination has Rational Support in the Administrative Record...............2

        A.  Hartford reasonably relied on objective and clinical evidence and the
            medical opinions of consulting physicians ...................................................2

            1.  Hartford reasonably relied on the medical opinions of qualified
                consulting physicians ...........................................................................3

            2.  Hartford appropriately determined that Miller lacked reliable evidence
                that fibromyalgia symptoms precluded her from working ...................................7

            3.  Hartford properly evaluated all of Miller's medical conditions including
                psoriatic arthritis, osteoarthritis, and cognitive complaints ...............................11

        B.  Hartford may support its determination with record evidence that bears upon
            the rationality of its determination...........................................................12

        C.  Miller's self-serving affidavit is outside the administrative record
            And cannot be considered under the arbitrary and capricious standard ..................15

        D.  Hartford provided a full and fair review of Miller's disability claim ......................17

II.     If the Court Finds that Miller Satisfied her Burden of Proof,
        an Administrative Remand is Necessary .......................................................18

Conclusion ....................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Aschermann v. Aetna Life Ins. Co.*,
No. 1:10-cv-00433-LJM-MJD, 2011 WL 6888840 (S.D. Ind. Dec. 30, 2011),
*aff'd*, 689 F.3d 726 (7th Cir. 2012) ........................................................................17

*Black v. Long Term Disability Ins.*,
582 F.3d 738 (7th Cir. 2009) ........................................................................... 3-4, 5

*Black v. Long Term Disability Ins.*,
No. 04 C 1230, 2007 WL 2821997 (E.D. Wis. Sept. 27, 2007),
*aff'd*, 582 F.3d 738 (7th Cir. 2009) ..........................................................................10

*Black & Decker Disability Plan v. Nord*,
538 U.S. 822 (2003) ....................................................................................................3

*Davis v. Unum Life Ins. Co. of Am.*,
444 F.3d 569 (7th Cir.), *cert. denied*, 549 U.S. 884 (2006) .......................3, 7, 10, 14

*Diaz v. Prudential Ins. Co. of Am.*,
499 F.3d 640 (7th Cir. 2007) .......................................................................................7

*Dragus v. Reliance Standard Life Ins. Co.*,
882 F.3d 667 (7th Cir. 2018) .......................................................................15, 16, 18

*Edwards v. Briggs & Stratton Ret. Plan*,
639 F.3d 355 (7th Cir. 2011) .......................................................................................3

*Gallo v. Amoco Corp.*,
102 F.3d 918 (7th Cir. 1996), *cert. denied*, 521 U.S. 1129 (1997) ...................13, 14

*Geiger v. Aetna Life Ins. Co.*,
845 F.3d 357 (7th Cir. 2017) .......................................................................................3

*Gutta v. Standard Select Trust Ins. Plans*,
No. 04 C 5988, 2006 WL 2644955 (N.D. Ill. Sept. 14, 2006),
*aff'd*, 530 F.3d 614 (7th Cir. 2008) ............................................................................16

*Herman v. Central States, S.E. & S.W. Areas Pension Fund*,
423 F.3d 684 (7th Cir. 2005) .....................................................................................14

*Hess v. Hartford Life & Acc. Ins. Co.*,
274 F.3d 456 (7th Cir. 2001) .....................................................................................15

*Houston v. Provident Life & Acc. Ins. Co.*,
390 F.3d 990 (7th Cir. 2004) ....................................................................................11

*Huffaker v. Metropolitan Life Ins. Co.*,
271 Fed.Appx. 493 (6th Cir. 2008)............................................................................11

*Kay v. Consolidated Route, Inc., Plan No. 510*,
No. 04 C 6562, 2005 WL 2978946 (N.D. Ill. Nov. 3, 2005)......................................5

*Langdon v. Principal Life Ins. Co.*,
No. 14-cv-6980, 2016 WL 4720025 (N.D. Ill. Sept. 9, 2016)..................................13

*Majeski v. Metropolitan Life Ins. Co.*,
590 F.3d 478 (7th Cir. 2009) ..............................................................................8-9, 15

*Marantz v. Permanente Med. Group, Inc. Long Term Disability Plan*,
687 F.3d 320 (7th Cir. 2012) ....................................................................................14

*Militello v. Central States, S.E. & S.W. Areas Pension Fund*,
360 F.3d 681 (7th Cir.), *cert. denied*, 543 U.S. 869 (2004)......................................15

*Mote v. Aetna Life Ins. Co.*,
502 F.3d 601 (7th Cir. 2007) ......................................................................................8

*Oxford v. Anthem Life Ins. Co.*,
No. 1:11-cv-00507-TWP-DML, 2012 WL 4390254 (S.D. Ind. Sept. 25, 2012)................4, 10

*Pakovich v. Broadspire Servs., Inc.*,
535 F.3d 601 (7th Cir. 2008) ....................................................................................18

*Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*,
195 F.3d 975 (7th Cir. 1999) ....................................................................................15

*Petropoulos v. Outboard Marine Corp. Employees Pen. Plan*,
No. 94 C 5954, 1995 WL 452995 (N.D. Ill. July 27, 1995)......................................16

*Porter v. Standard Ins. Co.*,
No. 10-cv-163-bbc, 2010 WL 4882867 (W.D. Wis. Nov. 24, 2010) ........................9

*Sarchet v. Chater*,
78 F.3d 305 (7th Cir. 1996) ......................................................................................10

*Semien v. Life Ins. Co. of N. Am.*,
436 F.3d 805 (7th Cir.), *cert. denied*, 549 U.S. 942 (2006)......................................7

iv

*Sisto v. Ameritech Sickness & Acc. Disability Plan*,
429 F.3d 698 (7th Cir. 2005) ...................................................................4

*Trice v. Lilly Employee Welfare Plan*,
No. 1:12-202-JMS-DKL, 2013 WL 6804749 (S.D. Ind. Dec. 19, 2013) ...........................9, 11

*Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan*,
102 F.3d 1435 (7th Cir. 1996) ...................................................................4, 7

*Williams v. Aetna Life Ins. Co.*,
509 F.3d 317 (7th Cir. 2007) ...................................................................8, 9

*Wiseman v. Prudential Ins. Co. of Am.*,
No. 1:12-cv-01337-SEB-DML, 2014 WL 4753692 (S.D. Ind. Sept. 24, 2014).................8, 11

*Zuckerman v. United of Omaha Life Ins. Co.*,
No. 09-CV-4819, 2011 WL 2173629 (N.D. Ill. May 31, 2011).............................................13

## Statutes

29 U.S.C. §1133 .......................................................................................17

29 U.S.C. §1133(1) ..................................................................................12

29 U.S.C. §1132(g) ..................................................................................19

20 CFR 404.1567(a).................................................................................6

29 CFR §2560.503-1(g)...........................................................................17

**INTRODUCTION**

When Dee Ann Miller ("Miller") submitted her disability claim to Hartford, she claimed to be disabled due to fibromyalgia, psoriatic arthritis, osteoarthritis, and depression, though during the litigation she disclaimed any psychiatric condition as a basis for seeking disability benefits under ERISA.  Hartford consulted highly qualified physicians with expertise in rheumatology, internal medicine, and psychiatry, who all agreed that Miller's conditions are not disabling. Hartford also evaluated Miller's entire Social Security file.  Like Hartford, the administrative law judge found that Miller possesses the physical functional capacity to perform sedentary level work on a full-time basis.

In total, twelve independent physicians opined that Miller's conditions were not disabling, including six physicians consulted by Hartford and six Social Security agency physicians considered by Hartford.  Only Miller's treating internist, Dr. Judi Brezausek, endorsed her disability claim.  But Dr. Brezausek's assessment of Miller's functional capacities—that she was unable to sit, stand, or walk more than 15 minutes at a time totaling no more than 1 hour per day—were extreme and unsupported by objective evidence and clinical findings.  The administrative record documents that Miller possesses far greater functionality than she proclaimed and Dr. Brezausek advocated, which Hartford extensively chronicles in its initial Memorandum and Response.

Judicial review under the arbitrary and capricious standard means deferential review of the evidence in the administrative record.  But Miller, in her Response, distorts this principle and endeavors to limit judicial review only to Hartford's determination letters, in order to conceal evidence of her substantial strenuous activities such as her daily exercise routine.  Nothing in ERISA case law confines judicial review in this fashion.  To the contrary, the Seventh Circuit

consistently has held that an ERISA administrator may defend its determination in court with any arguments that support the rationality of its determination.  An administrator cannot create new grounds for denying a claim, but that's not what Hartford has done.  Rather, Hartford, in its Memorandum, Response, and this Reply, articulates and explains the evidence supporting its determination to decline Miller's disability claim, a practice the Seventh Circuit endorses.

Miller attempts to confine Hartford merely to repeating what is said in its determination letter, contrary to Seventh Circuit authority.  Yet she improperly disregards principles of deferential judicial review by attaching her affidavit to her Response, in which she vows she is disabled and disclaims embarking on the many travel expeditions she admittedly planned while purportedly disabled.  She had the opportunity to submit an affidavit for Hartford to consider during the administrative remand, but chose instead to use her affidavit as a litigation tactic. Miller's belated affidavit is outside the administrative record and should be stricken.

## ARGUMENT

### I.  Hartford's Determination has Rational Support in the Administrative Record.

#### A.  Hartford reasonably relied on objective and clinical evidence and the medical opinions of consulting physicians.

Hartford, in its Memorandum and Response, details the substantial evidence that supports its determination that Miller failed to satisfy the Plan's definition of Disability beyond May 6, 2015. Hartford's determination has rational support in the administrative record, including (i) the medical opinions of two consulting physicians, rheumatologist Dr. Benjamin Kretzmann and internist Dr. Joshua Lewis, who evaluated all the medical evidence, (ii) the absence of objective evidence and clinical findings documenting work-precluding functional impairments in any of Miller's medical records, (iii) the Social Security administrative law judge's findings that Miller has the physical functional capacity to perform sedentary work on a full-time basis and that Dr.

Brezausek's assessment was too restrictive and unreliable, and (iv) Miller's strenuous exercise program including walking 5 miles daily.  This evidence provides rational support for Hartford's determination and therefore surpasses judicial review under the arbitrary and capricious standard. See *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 362 (7th Cir. 2017) ("the reviewing court must ensure only that a plan administrator's decision has rational support in the record") (quoting *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011)).

**1.      Hartford reasonably relied on the medical opinions of qualified consulting physicians.**

In her Response, Miller continues to advocate the flawed theory that treating physician opinions warrant greater weight than the opinions of an ERISA administrator's consulting physicians.  This is contrary to Supreme Court and Seventh Circuit authority.  She declares that her treating internist Dr. Brezausek "is in a superior position" to evaluate her functional capacities, implying that the opinions of the physicians consulted by Hartford are "inferior."  (Pl. Resp. pg. 7).

The Supreme Court, however, refused to adopt any rule that would require ERISA administrators to "accord special weight to the opinions of a claimant's physician" or "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).  Rather, the Seventh Circuit consistently has held that it is reasonable for an ERISA administrator to rely on the opinions of qualified consulting physicians who review the medical evidence.  "In such file reviews, doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation."  *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir.), *cert. denied*, 549 U.S. 884 (2006); accord *Black v. Long Term*

3

*Disability Ins.*, 582 F.3d 738, 745-746 (7th Cir. 2009) ("Ultimately, Standard's consulting physicians presented thorough and reasonable explanations for their determinations, and Standard was permitted to give them credence.").

When an administrator relies on the medical opinions of qualified consulting physicians who review the medical evidence, the administrator's determination cannot be ascribed to arbitrary and capricious decision-making.  "It is reasonable, therefore, for an administrator to rely on its doctors' assessments of the file," and "'it is not our function to decide whether we would reach the same conclusion' as the administrator."  *Id.* at 576, 577 (quoting *Sisto v. Ameritech Sickness & Acc. Disability Plan*, 429 F.3d 698, 701 (7th Cir. 2005); *Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996)).  See also *Oxford v. Anthem Life Ins. Co.*, No. 1:11-cv-00507-TWP-DML, 2012 WL 4390254, at *13 (S.D. Ind. Sept. 25, 2012) (holding that the administrator reasonably rejected a treating physician's opinion of disability when the medical records were not "entirely one sided" or "overwhelmingly" in favor of plaintiff's disability claim).

Hartford reasonably relied on the medical opinions of rheumatologist Dr. Kretzmann and internal medicine specialist Dr. Lewis, both of whom evaluated the objective evidence, clinical findings, and Miller's subjective reports of pain.  Drs. Kretzmann and Lewis opined that Miller has the functional capacity to consistently perform sedentary to light level work.  Both physicians agreed that Dr. Brezausek's August 2015 Treating Physician's Statement—which noted the extreme functional limitations that Miller was unable to sit, stand, or walk more than 15 minutes at a time totaling no more than 1 hour per day—was unsupported by the objective medical evidence and clinical findings.  Drs. Kretzmann and Lewis concurred that Miller "is capable of [at] least a Light Level of work activity" including unrestricted sitting, constant

4

reaching, frequent fine manipulation, grasping, and lifting up to ten pounds, and occasional standing, walking, and lifting up to twenty pounds.  (Doc. #49-8, PageID #: 2416).

It was reasonable for Hartford to rely on Dr. Kretzmann's and Dr. Lewis's medical assessment in determining that Miller was able to perform the sedentary duties of her Occupation after May 6, 2015.  See *Black*, 582 F.3d at 745-746 ("[W]e must defer to [the administrator's] choice between competing medical opinions so long as it is rationally supported by record evidence."); *Kay v. Consolidated Route, Inc., Plan No. 510*, No. 04 C 6562, 2005 WL 2978946, at *6 (N.D. Ill. Nov. 3, 2005) (discrediting the treating physician opinion of functional limitations that were "so severe as to be unreliable on their face" as to suggest plaintiff "was essentially bedridden … though this undisputedly was not the case").

Hartford consulted vocational analyst Valerie Allen, who determined that Miller's Occupation as performed in the national economy was that of a Collection Clerk, which is a sedentary occupation as defined by the Department of Labor's Dictionary of Occupation Titles, and that Miller possesses the physical functional capacities to perform her sedentary level Occupation consistent with the assessment of Drs. Kretzmann and Lewis.  (Doc. #49-1, PageID #: 495-96).

This is not a case in which the administrator's determination is at odds with overwhelming medical evidence.  To the contrary, Hartford's determination represents the majority medical consensus.  In total, twelve physicians evaluated the medical evidence and opined that Miller does not have work-precluding functional limitations, including six physicians consulted by Hartford (Drs. Kretzmann, Peck, Lewis, Alghafeer, Goldman, and Ruffell) and six physicians consulted by the Social Security Administration (Drs. Sonne, Brill, Sands, Fink, Johnson, and

Horton).[1]  (Doc. #49-1, PageID #: 407-08, 415-16; Doc. #49-3, PageID #: 999, 1002; Doc. #49-4, PageID #: 1369, 1372; Doc. #49-5, PageID #: 1725-26, 1728-29, 1735-36, 1737-38; Doc. #49-6, PageID #: 1762-65; Doc. #49-8, PageID #: 2416).  The only physician who supported Miller's disability claim was treating internist Dr. Brezausek, whose assessment of Miller's functional capacities was extreme, unsupported by any clinical findings, and therefore unreliable.

Miller asserts in her Response that the Social Security Administration's approval of benefits supports her disability claim.  (Pl. Resp. pg. 19).  But the administrative law judge definitely rejected Dr. Brezausek's unreliable assessment of her functional capacities, and expressly found that Miller possesses the physical functional capacity to perform sedentary work:  "The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ladders, ropes, scaffolds, ramps and stairs, and can occasionally balance, stoop, kneel, crouch, and crawl."  (Doc. #49-4, PageID #: 1465).  The administrative law judge found that Miller was limited to performing unskilled sedentary work due to her age, lack of jobs "in significant numbers," and "reduced mental functioning" from her "psychiatric conditions of depression and anxiety."   (Doc. #49-4, PageID #: 1465, 1467).  Under the ERISA Plan, however, Miller's age and job availability are not factors in determining disability.  Moreover, Miller's counsel withdrew from consideration of her ERISA claim any issue of psychiatric limitations.

The medical opinions of Drs. Kretzmann and Lewis, the vocational analysis of Ms. Allen, the administrative law judge's findings, and the medical opinions of ten additional physicians

---

[1]  Drs. Kretzmann, Peck, and Alghafeer are rheumatologists.  Drs. Lewis, Sonne, Brill, and Sands are internal medicine specialists.  Drs. Goldman and Ruffell are psychiatrists.  Drs. Fink, Johnson, and Horton are clinical psychologists.  (Doc. #49-1, PageID #: 408, 416; Doc. #49-3, PageID # 1000, 1003; Doc. #49-4, PageID #: 1468-69; Doc. #49-5, PageID #: 1726, 1732; Doc. #49-8, PageID #: 2409, 2415).

considered by Hartford, establish that Hartford reasonably decided to terminate benefits effective May 6, 2015. "This evidence makes it 'possible' for [the administrator] 'to offer a reasoned explanation' for its decision to deny benefits, and, under the arbitrary and capricious standard, we must respect [the administrator's] judgment." *Davis*, 444 F.3d at 576 (quoting *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 812 (7th Cir.), *cert. denied*, 549 U.S. 942 (2006), quoting *Trombetta*, 102 F.3d at 1438).

### 2.   Hartford appropriately determined that Miller lacked reliable evidence that fibromyalgia symptoms precluded her from working.

Miller continues to protest that Hartford's consulting physicians, Drs. Kretzmann and Lewis, rejected her subjective complaints of pain. Hartford's Response addresses and completely refutes Miller's argument. (Def. Resp. pgs. 27-28). Hartford specifically requested that Drs. Kretzmann and Lewis consider Miller's subjective complaints of pain, and Hartford's August 1, 2018 final determination letter acknowledges Miller's subjective complaints. (Doc. #49-4, PageID #: 1345, 1351). Both Dr. Kretzmann and Dr. Lewis expressly acknowledge her subjective complaints and self-reported deficits, but concluded based on all the medical evidence that her claimed functional limitations were not supported by objective evidence or clinical findings. (Doc. #49-8, PageID #: 2406, 2414).

Miller incorrectly conflates consideration of her subjective complaints with acceptance of her subjective complaints as dispositive evidence of disability. She argues that her persistence in seeking medical treatment supports an inference that her subjective symptoms were disabling, citing *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640 (7th Cir. 2007), a case decided under the *de novo* standard. (Pl. Resp. pg. 18). In *Diaz*, the Seventh Circuit vacated the district court's grant of summary judgment due to the existence of disputed issues of fact, finding that the plaintiff's subjective symptoms of pain supported an inference that his condition was disabling.

*Id.* at 645-46.  The *Diaz* court noted that the ERISA plan's terms expressly provide coverage for 24-months for disabilities due primarily to self-reported symptoms, which the plan defines to include subjective pain.  *Id.*  The district court, in finding that the plaintiff's subjective symptoms could not qualify as evidence of disability as a matter of law, gave no meaning to the plan's terms which specifically extended coverage for disabilities due to subjective symptoms.

The Seventh Circuit subsequently distinguished *Diaz*, a case subject to *de novo* judicial review, in *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317 (7th Cir. 2007), a case subject to deferential judicial review under the arbitrary and capricious standard.  The Seventh Circuit held that ERISA administrators are not required to accept subjective complaints as dispositive proof of disability.  "Consideration of such subjective complaints however, does not mean that they are to be dispositive of a claimant's entitlement to benefits."  *Id.* at 317.  Although pain is inherently subjective, "how much an individual's degree of pain or fatigue limits his functional capabilities … can be objectively measured."  *Id.* at 322.

The inherently subjective nature of fibromyalgia pain, therefore, "does not bar reviewers from requiring accurate documentation from a treating physician that the claimant's subjective symptoms of pain or fatigue limit his functional abilities in the workplace."  *Id.* at 323.  See also *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 607 (7th Cir. 2007) ("[T]his court draws a distinction between requiring objective evidence of the diagnosis, which is impermissible for a condition such as fibromyalgia that does not lend itself to objective verification, and requiring objective evidence that the plaintiff is unable to work, which is allowed."); *Wiseman v. Prudential Ins. Co. of Am.*, No. 1:12-cv-01337-SEB-DML, 2014 WL 4753692, at *16 (S.D. Ind. Sept. 24, 2014) ("Under Seventh Circuit law, 'a plan may deny benefits because a claimant has failed properly to document pain-induced functional limitations.'") (quoting *Majeski v. Metropolitan Life Ins. Co.*,

590 F.3d 478, 485 (7th Cir. 2009)); *Trice v. Lilly Employee Welfare Plan*, No. 1:12-202-JMS-DKL, 2013 WL 6804749, at *9 (S.D. Ind. Dec. 19, 2013) (applying *Williams*, and stating "the Court rejects Ms. Trice's argument to the extent she argues that the Plan insisted on 'clinical data that does not exist in medicine' to support her pain"); *Porter v. Standard Ins. Co.*, No. 10-cv-163-bbc, 2010 WL 4882867, at *12 (W.D. Wis. Nov. 24, 2010) (holding that the administrator reasonably required accurate documentation of functional limitations based on *Williams*, and distinguishing *Diaz*).

Hartford reasonably determined that Miller's claimed limitations, echoed in Dr. Brezausek's August 2015 Treating Physician's Statement, were unsupported by objective evidence or clinical findings. Nothing in Miller's medical records objectively document that Miller was unable to sit, stand, or walk longer than 15 minutes at a time totaling no more than 1 hour per day, due to pain from fibromyalgia or any other condition. Notably, in a February 2015 Physical Capacities Evaluation, Dr. Brezausek stated that Miller could sit for 8 hours during an 8-hour workday.[2] There was no significant deterioration in Miller's medical condition such that in February 2015 she could sit for 8 hours during an 8-hour work day, yet six months later in August 2015 she could not sit longer than 15 minutes at a time totaling no more than 1 hour per day. The only significant intervening event was that in March 2015 Hartford declined Miller's disability claim. See *Williams*, 509 F.3d at 323-24 (holding that when the treating physician's opinions "lacked accurate documentation" it is reasonable for the administrator to discredit those opinions).

---

[2] Dr. Brezausek's February 2015 Physical Capacities Form also notes that Miller can stand and walk for 4 hours per day. Although Miller suggests in her Response that Dr. Brezausek's handwritten number "4" is illegible, she does not dispute that Dr. Brezausek clearly noted that she can sit for "8" hours during an 8-hour work day. (Pl. Resp. pg. 15 n. 8).

Miller dismisses Dr. Brezausek's inconsistency as "cherry picking."  (Pl. Resp. pg. 15).  But the fact that Dr. Brezausek proffered inconsistent and irreconcilable opinions of Miller's functional capacities provides a reasonable basis to discredit her opinions.  When a treating physician changes her assessment in response to a disability claim denial, in order to include more restrictive functional limitations, the treating physician's opinions are properly discounted.  See *Davis*, 444 F.3d at 578 (finding that the treating physician acted "more as an advocate than a doctor rendering objective opinions" where the physician "changed his position" in response to the denial of benefits despite no change in the plaintiff's medical condition); *Black v. Long Term Disability Ins.*, No. 04 C 1230, 2007 WL 2821997, at *7 (E.D. Wis. Sept. 27, 2007), *aff'd*, 582 F.3d 738 (7th Cir. 2009) ("[T]he medical records between the date of surgery and the claimed date of disability did not indicate a worsening of plaintiff's condition that would justify the abrupt change in the physicians' opinions pre-and post-claim.").

Miller demonstrated that she possessed greater functionality than she and Dr. Brezausek claimed.  During the Social Security hearing in September 2016, Miller testified that her daily activities were severely limited, claiming that she spends "most of the day sleeping" and only walks short distances such as to retrieve mail from the mailbox.  (Doc. #49-4, PageID #: 1466-67).  Yet since April 2016, Miller was pursuing a rigorous exercise regimen including one hour daily of stationary bike riding, walking 5 miles daily, water aerobics 2-3 days per week, and resistance training and weight lifting 3 days per week.  (Doc. #49-8, PageID #: 2282-99).

Miller points to her "positive 18 point trigger point test" as "objective evidence to verify the manifestations of fibromyalgia."  (Pl. Resp. pg. 12).  The presence of trigger points is generally considered to be diagnostic of fibromyalgia.  *Oxford*, 2012 WL 4390254, at *10 (citing *Sarchet v. Chater*, 78 F.3d 305, 306-307 (7th Cir. 1996)).  A diagnosis of fibromyalgia, however, is not a

substitute for objective or clinical evidence that Miller is unable to perform sedentary work due to her medical condition, which Miller lacks.  See *Huffaker v. Metropolitan Life Ins. Co.*, 271 Fed.Appx. 493, 502 (6th Cir. 2008) ("The critical question for purposes of Huffaker's eligibility for disability benefits is not whether she does or does not have fibromyalgia, but whether she is disabled under the plan."); *Houston v. Provident Life & Acc. Ins. Co.*, 390 F.3d 990 (7th Cir. 2004) (noting that medical tests confirmed the plaintiff's diagnosis but "the record offers insufficient objective documentation that this medical condition rendered Ms. Houston unable to perform sedentary work").

Hartford does not dispute that Miller has been diagnosed with fibromyalgia.  Hartford, however, reasonably determined that the objective evidence and clinical findings failed to document that she was unable to work in her sedentary occupation due to her medical condition. Hartford's determination is supported by substantial medical evidence, Miller's documented physical activities, the administrative law judge's findings, and the opinions of Hartford's consulting physicians.  See *Trice*, 2013 WL 6804749, at *9 ("[I]t is not enough that some doctors have diagnosed Ms. Trice with a potentially disabling condition."); *Wiseman*, 2014 WL 4753692, at *16 ("The reason Prudential denied Ms. Wiseman's claim was not because she failed to produce objective evidence that she suffers from fibromyalgia and chronic pain, but because she failed to produce objective evidence that her fibromyalgia and chronic pain cause functional restrictions or impairments that would prevent her from performing her position.").

### 3.   Hartford properly evaluated all of Miller's medical conditions including psoriatic arthritis, osteoarthritis, and cognitive complaints.

Miller, throughout her Response, chastises Hartford for "routinely" focusing on "normal" examination findings, which she claims are "irrelevant" to fibromyalgia.  (Pl. Resp. pgs. 7-8). She tries to portray Hartford as focusing on phantom issues that have nothing to do with her

11

disability claim, and disparages the medical expertise of the rheumatologists consulted by Hartford (Drs. Kretzmann, Alghafeer, and Peck) as unfamiliar with the nature of fibromyalgia. Miller, however, claimed disability due to psoriatic arthritis and osteoarthritis in addition to fibromyalgia.  (Doc. #49-2, PageID #: 674).  Hartford, therefore, appropriately relied on Miller's consistently normal clinical findings, normal lumbar spine MRIs, and normal x-rays of her hands and hips, in determining that her psoriatic arthritis and osteoarthritis were not disabling.

In addition, Hartford reasonably determined that Miller was not disabled by concentration issues (independent of any psychiatric issues, for which Miller does not claim disability). Miller's medical records consistently document normal neurologic findings with no objective or clinical evidence of cognitive deficits.  Clinical psychologist Susan McDowell, Ph.D. and licensed clinical social worker Megan Halstead examined Miller on May 22, 2015 and noted normal memory and judgment, and "no noticeable cognitive deficits."  (Doc. #49-7, PageID #: 2178, 2175).  On October 13, 2015, Dr. McDowell opined that Miller has no cognitive deficits and "no specific learning issues identified."  (Doc. #49-7, PageID #: 2189).

Miller claimed to be disabled due to psoriatic arthritis and osteoarthritis, and to have ongoing cognitive deficits.  It is inappropriate for Miller to reverse course in her Response and criticize Hartford for evaluating those conditions.  Hartford, therefore, appropriately evaluated all of Miller's claimed conditions and reasonably determined they were not disabling.

**B.** **Hartford may support its determination with record evidence that bears upon the rationality of its determination.**

ERISA administrators are obligated to identify the specific reason for denying a claim for benefits.  29 U.S.C. §1133(1).  When the administrator denies a claim on one ground, the administrator cannot assert a different ground for denial during litigation.  This principle is sometimes referred to as a prohibition on *post hoc* or "after-the-fact" rationales.  See, e.g.,

*Langdon v. Principal Life Ins. Co.*, No. 14-cv-6980, 2016 WL 4720025, at *13 (N.D. Ill. Sept. 9, 2016) (when the defendant denied benefits based solely on the plan's preexisting condition exclusion, the administrator cannot argue in court the *post hoc* rationale that the plaintiff was not disabled); *Zuckerman v. United of Omaha Life Ins. Co.*, No. 09-CV-4819, 2011 WL 2173629, at *5 (N.D. Ill. May 31, 2011) (holding that the defendant cannot argue that plaintiff's claim was untimely when untimeliness was not a basis for declining benefits).

Miller distorts this principle and argues that Hartford, in defending the reasonableness of its determination, is limited to simply reiterating the evidence expressly cited in its final determination letter. She argues that Hartford's Memorandum, by noting that Dr. Brezausek lacks expertise in fibromyalgia, and that her strenuous exercise regimen and activities evidence functional capacities far greater than Dr. Brezausek advocated, "impermissibly attempts to create new grounds" for declining her disability claim. (Pl. Resp. pgs. 5, 7, 8).

Hartford has not advanced a new ground for declining Miller's disability claim. Hartford determined that she failed to satisfy the Your Occupation definition of disability beyond May 6, 2015. Her well-documented physical activities and Dr. Brezausek's lack of expertise in rheumatologic conditions comprise some of the significant evidence that *supports* the rationality of Hartford's determination, and are not completely new grounds for declining her claim.

The Seventh Circuit has emphasized that an ERISA administrator may defend its determination in court with any arguments that support the rationality of its determination. "When challenged in court, the plan administrator can defend his interpretation with any arguments that bear upon its rationality." *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996), *cert. denied*, 521 U.S. 1129 (1997). The administrator "is not limited to repeating what he told the applicant." *Id.* Judicial review under the arbitrary and capricious standard is review of

13

the evidence in the administrative record that bears upon the rationality of the administrator's determination, not merely a constricted review of the administrator's written determination letter.

ERISA does not "require the plan to identify each and every piece of evidence that it relied upon in reaching its decision to deny benefits." *Marantz v. Permanente Med. Group, Inc. Long Term Disability Plan*, 687 F.3d 320, 328 (7th Cir. 2012).  All the administrator "has to give the applicant is the reason for the denial of benefits; he does not have to explain to him why it is a *good* reason." *Gallo*, 102 F.3d at 923.  To require more "would turn plan administrators not just into arbitrators, for arbitrators are not usually required to justify their decisions, but into judges, who are." *Id.*  Nor does ERISA require that the physicians consulted by the administrator cite every piece of evidence that supports their medical conclusions.  See *Davis*, 444 F.3d at 578-79 (rejecting the district court's criticism of the "brevity" of the consulting physician reports, and emphasizing that doctors are not required to "write like lawyers"); *Herman v. Central States, S.E. & S.W. Areas Pension Fund*, 423 F.3d 684, 693 (7th Cir. 2005) (holding that an administrator must give the reason for the denial, "but it need not explain 'the reasoning behind the reasons … [that is,] the interpretive process that generated the reason for the denial.'") (quoting *Gallo*, 102 F.3d at 922).

Miller laments that "she never had the opportunity to respond" to the evidence of her daily exercise program and clearance for bariatric surgery "before the record in this matter was closed."  (Pl. Resp. pg. 22).  Miller, however, submitted this evidence to Hartford during the administrative remand and requested that Hartford consider it.  (Doc. #49-7, PageID #: 2276; Doc. #48-8, PageID #: 2278-2394).  She has no legitimate basis to complain that Hartford considered and relied on evidence she chose to submit for review.

### C.   Miller's self-serving affidavit is outside the administrator record and cannot be considered under the arbitrary and capricious standard.

Miller improperly endeavors to prohibit Hartford from supporting the rationality of its determination with evidence *contained* in the administration record.  Yet she disregards the arbitrary and capricious standard and attaches to her Response an affidavit that is *outside* the administrative record.  The Seventh Circuit consistently confines judicial review under the arbitrary and capricious standard to the evidence contained in the administrative record. "Deferential review of an administrative decision means review on the administrative record." *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999).  See also *Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 674 (7th Cir. 2018) ("Because this case is subject to the deferential arbitrary and capricious standard and not *de novo* review, we find that the district court did not err in denying to supplement the record."); *Majeski*, 590 F.3d at 482-83 (prohibiting plaintiff from supplementing the administrative record with evidence that was not submitted to the administrator); *Militello v. Central States, S.E. & S.W. Areas Pension Fund*, 360 F.3d 681, 686 (7th Cir.), *cert. denied*, 543 U.S. 869 (2004) ("[B]ecause the standard of review is deferential, we 'consider only the evidence that was before the administrator when it made its decision'") (quoting *Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456, 462 (7th Cir. 2001)).

Miller declares in her affidavit that although she planned numerous vacation trips to Nashville, Florida, Aruba, and New York City in 2014—as evidenced by her social media posts which are in the administrative record—she asserts that she cancelled her trips due to disability. (Pl. Resp. Ex. 1, Affid. ¶¶ 14-18).  To try to explain away Dr. Brezausek's October 1, 2014 notation that she "Just crashed after returning from New York," Miller speculates that Dr. Brezausek must have been referring to her first New York City trip nine months earlier in

15

December 2013.  (Pl. Resp. Ex. 1, Affid. ¶ 20).  Miller, however, saw Dr. Brezausek seven times between December 2013 and October 2014.  Miller's theory that Dr. Brezausek waited until October 1, 2014 to document that she "just crashed" after returning from New York nine months earlier defies common sense.

If Miller desired to contest or clarify evidence of her travel activities, she should have submitted an affidavit to Hartford during the administrative remand.  Hartford and the Plan specifically cited evidence of Miller's travels in their Reply in Support of their Motion for an Administrative Remand, to rebut Miller's assertion that the evidence overwhelmingly favored an award of benefits, prompting Miller's Motion to Strike, which the Court denied.  (Doc. #30, PageID#: 297; 5/19/2017 Order, Doc. #34, PageID#: 313).

Miller, thus, knew that Hartford construed her social media posts and Dr. Brezausek's October 2014 medical record as possible evidence of post-disability claim travel.  Rather than submit an affidavit for Hartford's consideration during the administrative remand, Miller chose to forsake the administrative review process and submit the affidavit as an exhibit to her summary judgment brief, in an improper attempt to circumvent the arbitrary and capricious standard.  Miller's affidavit, therefore, should be stricken.  *Dragus*, 882 F.3d at 674 ("We have allowed parties to … present new evidence in ERISA cases subject to *de novo* judicial decisions, … but never where the question is whether a decision is … arbitrary and capricious."); *Gutta v. Standard Select Trust Ins. Plans*, No. 04 C 5988, 2006 WL 2644955, at *17 (N.D. Ill. Sept. 14, 2006), *aff'd*, 530 F.3d 614 (7th Cir. 2008) ("[T]his court acts in an appellate capacity when it reviews a plan's decision denying benefits, so it cannot consider evidence which was not before the plan."); *Petropoulos v. Outboard Marine Corp. Employees Pen. Plan*, No. 94 C 5954, 1995 WL 452995, at * 4 (N.D. Ill. July 27, 1995) ("[A]llowing plaintiff to ignore defendant's

16

administrative procedures ignores Congress' mandate to have such procedures in place, see 29 USC §1133, as well as the regulations permitting time limits to be implemented along with the procedures, 29 CFR §2560.503-1(g).").

Moreover, Hartford did not decline Miller's disability claim based on her vacation travel activities.  As explained in Defendants' Response, Miller's social media postings about travel prompted Hartford to obtain updated medical records.  (Def. Resp. pg. 31).  After consulting qualified physicians in the fields of rheumatology, internal medicine, and psychiatry, Hartford determined that the medical evidence did not support Miller's claimed functional limitations. Hartford based its determination on substantial medical and vocational evidence, not on Miller's travel plans.

        **D.**     **Hartford provided a full and fair review of Miller's disability claim.**

Miller, in her Response, continues to reprimand Hartford's unintentional omission from the pre-remand administrative record of several pages of Dr. Brezausek's August 2015 Treating Physician's Statement.  She also criticizes Hartford's pre-remand decision not to consider a letter from her rheumatologist Dr. Bell clarifying that he does not tell patients whether they can perform a certain level of work.  (Pl. Resp. pgs. 13-14; Doc. #49-1, PageID #: 615).  Hartford, however, obtained an administrative remand—over Miller's objections—and evaluated the August 2015 Treating Physician's Statement and Dr. Bell's letter of clarification.

The purpose of ERISA's administrative review procedures is to permit both the claimant and the administrator to address and, when necessary, to rectify perceived deficiencies in order to ensure the claim receives a full and fair review.  See, e.g., *Aschermann v. Aetna Life Ins. Co.*, No. 1:10-cv–00433-LJM-MJD, 2011 WL 6888840, at *14 (S.D. Ind. Dec. 30, 2011), *aff'd*, 689 F.3d

726 (7th Cir. 2012) (noting that the administrator corrected its misunderstanding of the treating physician's opinion during the administrative appeal and provided a full and fair review).

Hartford, in obtaining an administrative remand, considered all the evidence in the administrative record including the August 2015 Treating Physician's Statement and Dr. Bell's letter of clarification.  Hartford also permitted Miller to supplement the administrative record with nearly 2,000 pages of additional documents, which Hartford thoroughly evaluated despite no legal obligation to do so.  Hartford provided Miller with a full and fair review of her disability claim, allowed her to exponentially expand the administrative record during the remand, carefully considered all the evidence, and reasonably determined that she failed to satisfy the Plan's definition of Disability beyond May 6, 2015.  See *Dragus*, 882 F.3d at 673 (holding that the administrator provided the plaintiff with "more claim review process than the Department of Labor requires" including "the opportunity to engage in dialogue throughout the process").

## II.     If the Court Finds that Miller Satisfied Her Burden of Proof, an Administrative Remand is Necessary.

Hartford maintains that its determination has rational support and should be upheld under the arbitrary and capricious standard.  But if the Court finds that Miller satisfied her burden of proof, any recovery by Miller in this lawsuit would be limited to benefits for the discrete period from May 7, 2015 to September 7, 2016, which is the remainder of the "Your Occupation" period.  A remand would be necessary for Hartford to determine, in its discretion, whether Miller satisfied the Plan's "Any Occupation" definition of Disability as of September 8, 2016 and thereafter.  See *Pakovich v. Broadspire Servs., Inc.*, 535 F.3d 601, 607 (7th Cir. 2008) ("[W]hen the plan administrator has not issued a decision on a claim for benefits that is now before the courts, the matter must be sent back to the plan administrator ….").

**CONCLUSION**

Applying the arbitrary and capricious standard, Hartford's determination that Miller failed to satisfy the Plan's Your Occupation definition of Disability beyond May 6, 2015 has rational support in the administrative record and should be upheld.  Summary judgment should be entered for Hartford and the Plan including an award of attorneys' fees and costs under 29 U.S.C. §1132(g) and the Federal Rules of Civil Procedure.

                                        Respectfully submitted,

Warren von Schleicher (IL- 6197189)         By:  */s/ Warren von Schleicher*
SMITH | VON SCHLEICHER + ASSOCIATES        Attorney for Defendants,
180 N. LaSalle St. Suite 3130               Hartford Life & Accident Insurance Company, and
Chicago, Illinois 60601                     Group Long Term Disability Plan for Employees of
P  312.541.0300  | F  312.541.0933          Springleaf Finance, Inc.
warren.vonschleicher@svs-law.com

## CERTIFICATE OF SERVICE

I certify that on June 1, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record listed below:

Bridget O'Ryan
O'Ryan Law Firm
1901 Broad Ripple Avenue
Indianapolis, Indiana 46220
boryan@oryanlawfirm.com

*/s/ Warren von Schleicher*
SMITH | VON SCHLEICHER + ASSOCIATES
180 N. LaSalle Street Suite 3130
Chicago, Illinois  60601
P  312.541.0300 | F  312.541.0933
warren.vonschleicher@svs-law.com
Ill. Bar No. 6197189

20